Gerald E. Hawxhurst (Bar No. 220327)
  jerry@cronehawxhurst.com
Daryl M. Crone (Bar No. 209610)
  daryl@cronehawxhurst.com
Joshua P. Gelbart (Bar No. 274021)
  jgelbart@cronehawxhurst.com
CRONE HAWXHURST LLP
10880 Wilshire Blvd., Suite 1150
Los Angeles, California 90024
Telephone:   (310) 893-5150
Facsimile:   (310) 893-5195

Attorneys for Defendants
The American Bottling Company and
Dr Pepper Snapple Group, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ROBERT M. WARD, et al., | CASE NO. CV09-3279 DMG (CWx) |
| Plaintiffs, | **DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO <u>LOCAL RULE</u> 16-4** |
| vs. | |
| CADBURY SCHWEPPES BOTTLING GROUP, et al., | |
| Defendants. | Pretrial Conf. Date:   October 18, 2011<br>Pretrial Conf. Time:   3:30 p.m.<br>Ctrm.:   7 |

{00043457.DOC - v2}

# **TABLE OF CONTENTS**

I.      SUMMARY OF PLAINTIFFS' CLAIMS ................................................... - 1 -

II.     ELEMENTS OF PLAINTIFFS' CLAIMS .................................................. - 1 -

    A.      Plaintiffs' First Claim for Age Discrimination ................................. - 1 -

    B.      Plaintiffs' Second Claim for Failure to Prevent Age
        Discrimination........................................................................ - 2 -

    C.      Ward's Third Claim for Wrongful Constructive Discharge ............. - 2 -

    D.      Jones's Fourth Claim for Retaliation ............................................ - 4 -

    E.      Talton's and Valadez' Fifth Claim for Failure to Engage in a
        Good Faith Interactive Process ...................................................... - 4 -

    F.      Talton's and Valadez' Sixth Claim for Failure to Reasonably
        Accommodate Their Claimed Disabilities.................................... - 5 -

III.    DEFENDANTS' KEY EVIDENCE IN OPPOSITION TO
    PLAINTIFFS' CLAIMS ......................................................................... - 7 -

    A.      Plaintiffs' First Claim for Age Discrimination ................................. - 7 -

        1.      Plaintiffs' Alleged "Adverse Employment Actions"
            Amount to a Claim That They Were Not Given
            Preferential Treatment ....................................................... - 7 -

        2.      Ward's Discrimination Claim is Also Belied By the
            Evidence........................................................................ - 9 -

        3.      The Non-Management Plaintiffs' Alleged Physical
            Injuries, to the Extent They Exist, Have Been Resolved in
            the Workers' Compensation System ...................................... - 10 -

    B.      Plaintiffs' Second Claim for Failure to Prevent Discrimination ..... - 10 -

    C.      Ward's Third Claim for Wrongful Constructive Discharge ............ - 11 -

    D.      Jones's Fourth Claim for Retaliation .............................................. - 12 -

    E.      Talton's and Valadez' Fifth and Sixth Claims................................ - 12 -

IV.     SUMMARY OF DEFENDANTS' AFFIRMATIVE DEFENSES............ - 15 -

V.      ELEMENTS OF DEFENDANTS' AFFIRMATIVE DEFENSES .......... - 16 -

    A.      Affirmative Defense of After-Acquired Evidence........................... - 16 -

    B.      Affirmative Defense of Estoppel ................................................. - 16 -

    C.      Affirmative Defense of Res Judicata ............................................ - 16 -

    D.    Affirmative Defense of Workers' Compensation Preemption (Exclusive Remedy)........................................................................... - 17 -

    E.    Affirmative Defense of Unclean Hands............................................ - 18 -

    F.    Affirmative Defense of Settlement and Release.............................. - 18 -

    G.    Affirmative Defense of Statute of Limitations ................................ - 19 -

VI.    DEFENDANTS' KEY EVIDENCE IN SUPPORT OF THEIR AFFIRMATIVE DEFENSES ................................................................ - 19 -

    A.    Affirmative Defense of After-Acquired Evidence........................... - 19 -

    B.    Affirmative Defense of Estoppel ..................................................... - 19 -

    C.    Affirmative Defense of Res Judicata ............................................... - 20 -

    D.    Affirmative Defense of Worker's Compensation Preemption (Exclusive Remedy)........................................................................... - 20 -

    E.    Affirmative Defense of Unclean Hands............................................ - 22 -

    F.    Affirmative Defense of Settlement and Release.............................. - 22 -

    G.    Affirmative Defense of Statute of Limitations ................................ - 23 -

VII.    JURY RIGHT.................................................................................... - 23 -

VIII.    EVIDENTIARY ISSUES.................................................................... - 23 -

IX.    ISSUES OF LAW .............................................................................. - 24 -

    A.    Whether Plaintiffs Suffered an "Adverse Employment Action" as a Matter of Law........................................................................... - 24 -

    B.    Whether Ward's Third Claim for Relief Can Be Founded on Defendants' Beverage Practices ..................................................... - 25 -

    C.    The Court Should Bar Evidence of Claimed Injuries Submitted by Plaintiffs to Workers' Compensation .......................................... - 26 -

    D.    Whether Talton's Disability Claims Are Barred By Unclean Hands............................................................................................... - 26 -

    E.    Whether Plaintiffs May Call Forty Witnesses at Trial ................... - 26 -

X.    ATTORNEYS' FEES.......................................................................... - 26 -

Pursuant to Local Rule 16-4, defendants The American Bottling Company and Dr Pepper Snapple Group, Inc. ("Defendants") submit this Memorandum of Contentions of Fact and Law in advance of the Final Pretrial Conference to be conducted in this action on October 18, 2011, at 3:30 p.m.:

# I.   SUMMARY OF PLAINTIFFS' CLAIMS

Plaintiffs allege the following claims for relief:

Claim 1:  All Plaintiffs sue for age discrimination in violation of California's Fair Employment and Housing Act ("FEHA").

Claim 2:  All Plaintiffs sue for failure to take steps necessary to prevent the alleged age discrimination, in violation of FEHA.

Claim 3:  Plaintiff Ward sues for constructive discharge in violation of public policy.

Claim 4:  Plaintiff Jones sues for retaliation in violation of FEHA.

Claim 5:  Plaintiffs Valadez and Talton sue for failure to engage in a good faith interactive process in violation of FEHA.

Claim 6:  Plaintiffs Valadez and Talton sue for failure to accommodate their alleged disabilities in violation of FEHA.

# II.   ELEMENTS OF PLAINTIFFS' CLAIMS

A.   Plaintiffs' First Claim for Age Discrimination

To prevail on their claim for age discrimination in violation of FEHA, see Cal. Gov't. Code § 12940(a), each Plaintiff must show that:

(1)   Defendant was an employer;

(2)   Plaintiff was an employee of Defendant;

(3)   Plaintiff suffered an adverse employment action that materially affected the terms, conditions or privileges of his employment;

(4)   Plaintiff was over the age of 40, and his age was a motivating reason for the adverse employment action;

- 1 -

1         (5)     Plaintiff was harmed; and

2         (6)     The adverse employment action was a substantial factor in

3                 causing Plaintiff's harm.

4 See California Judicial Council of California Civil Jury Instructions, 2011 Ed.

5 ("CACI") 2500; Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1053-54, 32 Cal.

6 Rptr. 3d 436 (2005); see also Sandell v. Taylor-Listug, Inc., 188 Cal. App. 4th 297,

7 321, 115 Cal. Rptr. 3d 453 (2010).  "A 'motivating reason' is a reason that

8 contributed to the decision to take certain action, even though other reasons also

9 may have contributed to the decision."  CACI 2507.

10      B.     Plaintiffs' Second Claim for Failure to Prevent Age Discrimination

11        To prevail on their claim for failure to prevent age discrimination in violation

12 of FEHA, see Cal. Gov't. Code § 12940(k), each Plaintiff must show that:

13         (1)     He was employed by Defendants;

14         (2)     He was subjected to discrimination because he was over the age

15                 of 40;

16         (3)     Defendants failed to take reasonable steps to prevent the

17                 discrimination; and

18         (4)     Defendants' failure to take reasonable steps to prevent the

19                 discrimination was a substantial factor in causing his harm.

20 See CACI 2527.  An employer cannot be held liable for failing to prevent

21 discrimination where the employee's parallel discrimination claim under Cal. Gov't.

22 Code § 12940(a) fails.  See Trujillo v. North County Transit Dist., 63 Cal. App. 4th

23 280, 289, 73 Cal. Rptr. 2d 596 (1998).

24      C.     Ward's Third Claim for Wrongful Constructive Discharge

25        To prevail on his claim for wrongful constructive discharge in violation of

26 public policy, Ward must show that:

27         (1)     He was employed by Defendants;

28         (2)     Defendants required him to engage in unlawful conduct;

(3)    The requirement was so intolerable that a reasonable person in his position would have had no reasonable alternative except to resign;

(4)    He resigned because of this requirement;

(5)    He was harmed; and

(6)    The requirement was a substantial factor in causing his harm.

See CACI 2431.  Defendants also contend that Ward must demonstrate some type of retaliation against him.  See, e.g., Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1246, 32 Cal. Rptr. 2d 223 (1994) ("The conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.  The proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee."); Yanowitz, 36 Cal. 4th at 1043 ("a retaliation claim may be brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory") (emphasis added)); see also Gibson v. Aro Corp., 32 Cal. App. 4th 1628, 1638, 38 Cal. Rptr. 2d 882 (1995) (an employee cannot rely on an employer's supposed "constructive knowledge" of intolerable work conditions; instead, he must notify someone in a position of authority, so that the employer is afforded the opportunity to attempt corrective measures before a lawsuit is required); Colores v. Bd. of Trustees, 105 Cal. App. 4th 1293, 1306 (2003) ("[t]he length of time an employee remains on the job after the onset of the alleged intolerable conditions may be one factor in determining whether a reasonable person would find the conditions intolerable").  Furthermore, Ward must establish a nexus between the "intolerable conditions" and his decision to quit.  See Montero v. AGCO Corp., 192 F.3d 856, 861 (9th Cir. 1999) (finding no constructive discharge giving rise to Title VII claim because, among other things:  "By the time Plaintiff resigned she was not subject to intolerable working conditions.  In her

1   deposition, plaintiff testified that [her superior's] sexually harassing behavior had

2   ceased three to four months before she left [defendant].”); <u>Tiner v. Greenberg</u>

3   <u>Traurig, P.A.</u>, 2001 WL 1262616, at *6 (C.D. Cal. Sept. 10, 2001) (“[Plaintiff] can

4   show no constructive discharge causally related to the claimed billing fraud.  The

5   fact that the alleged billing fraud, if it occurred, may have been unlawful—even

6   criminally—is not a sufficient basis for quitting.”).

7         D.     <u>Jones's Fourth Claim for Retaliation</u>

8         To prevail on his claim for unlawful retaliation in violation of FEHA, <u>see</u> <u>Cal.</u>

9   <u>Gov't. Code</u> § 12940(h), Jones must show that:

10              (1)    He opposed what he reasonably believed to be a discriminatory

11                    practice;

12              (2)    Defendants engaged in conduct that, taken as a whole, materially

13                    and adversely affected the terms and conditions of his

14                    employment;

15              (3)    His opposition to Defendants' practice was a motivating reason

16                    for Defendants' conduct;

17              (4)    He was harmed; and

18              (5)    Defendants' conduct was a substantial factor in causing his harm.

19  <u>See</u> CACI 2505; <u>Yanowitz</u>, 36 Cal. 4th at 1042-43.

20        E.     <u>Talton's and Valadez' Fifth Claim for Failure to Engage in a Good</u>

21             <u>Faith Interactive Process</u>

22        To prevail on their claim for failure to engage in a good faith interactive

23  process in violation of FEHA, <u>see</u> <u>Cal. Gov't. Code</u> § 12940(n), each of Talton and

24  Valadez must show that:

25              (1)    Defendants employed him;

26              (2)    He had a physical condition that was known to Defendants;

27

28

1        (3)    He requested that Defendants make reasonable accommodation

2                    for his physical condition so that he would be able to perform the

3                    essential job requirements;

4        (4)    He was willing to participate in an interactive process to

5                    determine whether reasonable accommodation could be made so

6                    that he would be able to perform the essential job requirements;

7        (5)    Reasonable accommodation was possible;

8        (6)    Defendants failed to participate in a timely good-faith interactive

9                    process with him to determine whether reasonable

10                   accommodation could be made;

11        (7)    He was harmed; and

12        (8)    Defendants' failure to engage in a good-faith interactive process

13                   was a substantial factor in causing his harm.

14 See CACI 2546; Nadaf-Rahrov v. The Neiman Marcus Group, Inc., 166 Cal. App.

15 4th 952, 980-85, 83 Cal. Rptr. 3d 190 (2008) (an employee who brings a section

16 12940(n) claim bears the burden of proving a reasonable accommodation was

17 available before the employer can be held liable under the statute).

18       F.    Talton's and Valadez' Sixth Claim for Failure to Reasonably

19             Accommodate Their Claimed Disabilities

20      To prevail on their claim for failure to reasonably accommodate claimed

21 disabilities in violation of FEHA, see Cal. Gov't. Code § 12940(m), each of Talton

22 and Valadez must show that:

23        (1)    Defendants employed him;

24        (2)    Defendants knew he had a physical condition that limited a

25                   major life activity;

26        (3)    He was able to perform his essential job duties with reasonable

27                   accommodation for his physical condition;

28

(4) Defendants failed to provide reasonable accommodation for his physical condition;

(5) He was harmed; and

(6) Defendants' failure to provide reasonable accommodation was a substantial factor in causing his harm.

CACI 2541; see also Nadaf-Rahrov, 166 Cal. App. 4th at 980-85 ("we conclude that the burden of proving ability to perform the essential functions of a job with accommodation should be placed on the plaintiff"). A reasonable accommodation is a reasonable change to the workplace that allows an employee with a disability to perform the essential duties of the job. See CACI 2542. "Any reasonable accommodation is sufficient to meet an employer's obligations. However, the employer need not adopt the most reasonable accommodation nor must the employer accept the remedy preferred by the employee." Soldinger v. N.W. Airlines, 51 Cal. App. 4th 345, 370, 58 Cal. Rptr. 2d 747 (1996) (emphasis in original). An employer is only obligated to reassign the employee to another position within the company if there was an existing, vacant position for which the plaintiff was qualified; the employer is not required to create a new position to accommodate the disabled worker. Watkins v. Ameripride Servs., 375 F.3d 821, 828 (9th Cir. 2004) (applying California law); see also Hastings v. Dep't of Corrections, 110 Cal. App. 4th 963, 972, 2 Cal. Rptr. 3d 329 (2003) (what is required is the duty to reassign a disabled employee if an already funded, vacant position at the same level exists).

## III. DEFENDANTS' KEY EVIDENCE IN OPPOSITION TO PLAINTIFFS' CLAIMS

### A. Plaintiffs' First Claim for Age Discrimination

#### 1. Plaintiffs' Alleged "Adverse Employment Actions" Amount to a Claim That They Were Not Given Preferential Treatment

Plaintiffs allege that in the spring of 2007, Richard Laitinen, a former Branch Manager of Defendants' warehouse facility located in San Fernando, California, rearranged work assignments for various warehousemen and delivery drivers on the basis of their age, so that the oldest employees would be given the most physically demanding tasks. Laitinen purportedly devised that alleged scheme in order for the older employees to get injured and go on worker's compensation leave, or be so frustrated that they would quit. Laitinen allegedly told Plaintiff Robert Ward—who was then the Operations Manager at the San Fernando facility—that he desired to "bring in new young blood."

These allegations of age discrimination against the Non-Management Plaintiffs are false. Laitinen (who left Defendants' employ long ago for unrelated reasons) continues to steadfastly maintain that he never discriminated against anyone on the basis of their age. His position is corroborated by the fact that all Plaintiffs concede that no one was assigned tasks that employees (young or old) were not regularly asked to complete before or after Laitinen arrived as Branch Manager of the San Fernando facility. Stated differently, the work assignments at issue—building orders, working breakage and driving various size trucks with varying routes—were part of the ordinary tasks completed by *all* employees at the San Fernando branch, including "less senior employees." It is for this reason that the Non-Management Plaintiffs' union found no wrongdoing, after conducting its own investigation of Plaintiffs' age discrimination allegations.

Furthermore, each of the Non-Management Plaintiffs admits that Defendants had a right to assign them to the jobs about which they complain, so long as they

1   were paid their current hourly rate set forth in their union's collective bargaining

2   agreement.  They all concede that their pay was not decreased, but instead admit that

3   they received annual pay increases.  Plaintiffs' contention is essentially that they

4   were entitled to preferential treatment on the basis of their seniority, which simply is

5   not actionable under FEHA.

6          The evidence also will demonstrate that Ward never reported Laitinen's

7   purported misconduct to upper management until the day he decided to go on

8   extended "stress leave," on his way out the door.  In other words, Ward supposedly

9   permitted the alleged discriminatory plan to continue for weeks, and only reported it

10  because he already had decided to quit in favor of employment with another

11  company.  Significantly, Ward concedes that he was never threatened, punished or

12  otherwise mistreated for not following Laitinen's alleged orders to discriminate

13  against the older workers.

14         The truth is that Laitinen instituted no change that resulted in a higher

15  incidence of employee injury.  It is undisputed that industrial accidents are an

16  unfortunate reality of working in a warehouse like the one in San Fernando, and that

17  the very nature of the work means there's a real prospect of injury to all employees.

18  For example, Ward testified at deposition that just by assigning an employee a task

19  in the warehouse—from driving a forklift to any other job—the employee is put at

20  risk of injury.  According to his testimony, Laitinen was attempting to rectify an

21  inefficient (and unfair) allocation of responsibilities—where the most experienced

22  employees were allowed to refuse to do the more difficult and less desirous

23  assignments solely because they had greater seniority and, on that basis, insisted that

24  their less-tenured brethren complete what they perceived to be the most "difficult"

25  tasks.

26         Plaintiffs' theory of discrimination is also nonsensical given that deliberately

27  injuring a warehouseman or delivery driver only would have *increased* Defendants'

28  costs and therefore impacted Laitinen's own job performance.  Because Defendants

are "self-insured" under the workers' compensation system, they regularly compensate employees for industrial injuries caused by work.  Indeed, it is undisputed that for nearly all of Plaintiffs' claimed industrial injuries, they had their medical expenses paid by Defendants, and they had some or all of their lost wages paid by Defendants.  Laitinen was responsible for the expenses incurred at the San Fernando branch, and was "charged" with the cost of all workers' compensation claims.  Like all other branch managers, Laitinen was incentivized to minimize industrial injuries, and would have gained nothing by intentionally causing them.

    2.    Ward's Discrimination Claim is Also Belied By the Evidence

Ward alleges that Defendants subjected him to an ongoing "pattern of discrimination based on his age" commencing many years before he went on extended workers' compensation "stress leave" in July 2007.  Far from suffering any adverse employment action, Ward judicially admits in the Complaint that, after starting as a salesperson in 1986, Defendants "repeatedly promoted [him] to various positions."  He further admits that the person he blames for the discrimination, Taylor Marcus, in or about 2004 promoted Ward to Operations Manager of the San Fernando branch.

Ward's complaints of elevated job responsibilities and unfair "write ups" do not amount to constructive termination.  To the extent Ward was "written up," it was because of his poor job performance.  The fact that he believes he was not sufficiently lauded for doing other things does not amount to discrimination.  Moreover, by his own reckoning, Ward remained in his position for years before he decided to secure new employment, which belies his contention that a reasonable person would have quit in the face of Defendants' alleged misconduct.  Indeed, the undisputed evidence is that Ward had been actively looking for another job for several years before he resigned; he had sought and was on the verge of obtaining different employment when he returned to work at the San Fernando facility, from a "stress leave," on June 26, 2007.  Ward then left for another extended "stress leave"

on July 17, 2007 and voluntarily quit four months later, in November 2007, because his new employer required him to do so—not because Defendants somehow "coerced" the resignation.  Even if it constituted an "adverse employment action"— which it does not—there simply is no nexus between the purported mistreatment that Ward suffered in the 20 days he was at work during the summer of 2007 (let alone the purported mistreatment suffered over the previous several *years*), and his decision to quit a couple of months after he walked out for the last time.

### 3. The Non-Management Plaintiffs' Alleged Physical Injuries, to the Extent They Exist, Have Been Resolved in the Workers' Compensation System

The Non-Management Plaintiffs allege they suffered a variety of physical and psychological injuries as a result of purportedly being assigned more difficult tasks on the basis of age.  However, among other things, almost none of the Plaintiffs consulted a psychologist or psychiatrist for their purported psychological injuries. Furthermore, Talton cannot possibly prove that the stroke he has suffered was caused by work.  In any event, as discussed at greater length below, all of Plaintiffs' alleged physical injuries are preempted by the workers' compensation bargain.  In fact, all Plaintiffs have submitted workers' compensation claims for their alleged industrial-related injuries, and most of those claims have been settled and released.

### B. Plaintiffs' Second Claim for Failure to Prevent Discrimination

As noted above, Plaintiffs cannot hold Defendants liable for failing to prevent discrimination because no actionable discrimination occurred.

Moreover, the evidence will demonstrate that Defendants took reasonable steps to prevent any discrimination.  Indeed, all Plaintiffs knew which human resources personnel to contact on the subject, and with limited exceptions, never did so.  Significantly, Plaintiff Jones was the union steward at the San Fernando facility, and he too failed to notify the company of alleged wrongdoing.  Instead, Jones merely complained to the human resources employee responsible for the San

Fernando facility, Jack Saatjian, that he felt he was being asked to complete tasks that were beneath him, in light of his seniority.  In addition, the Non-Management Plaintiffs' own union itself concluded that nothing improper took place.

C.  Ward's Third Claim for Wrongful Constructive Discharge

Mr. Laitinen became Branch Manager of the San Fernando branch in April 2007, just days before Ward went out on workers' compensation leave for work-related stress.  Ward did not report to work or have any discussions with Mr. Laitinen again until Ward returned to work on June 26, 2007.  Ward admits that he returned to work with the expectation that he would quit almost immediately, in favor of a job he had applied for during the time he supposedly was disabled.

Ward concedes that, from the time Ward returned to work to the time he voluntarily quit weeks later, Mr. Laitinen took no action that affected Ward's working conditions and did not take action against him for not following his supposed orders.  In other words, Ward suffered no retaliation.  Ward concedes that he and Mr. Laitinen discussed their differences of opinion concerning the assignment of tasks to warehousemen and delivery drivers, and that they never discussed the issue again.  Moreover, Ward's claim that he was subjected to intolerable working conditions after he voluntarily left on July 17, 2007 is insufficient.  The facts are that Ward went on extended "stress leave" a second time in two months beginning on July 17, 2007, knowing that he would be taking a new job.  Ward started his new job in November 2007, and it was only then that he sent his voluntary resignation—ending his purported "stress leave" on his own terms—to take a job that he testified would be less stressful for him.

Ward also bases his constructive termination claim on the allegation that Mr. Laitinen instructed employees, including Ward, to sell product that Ward believed posed a health hazard.  He contends it is hazardous to sell product that has been spilled on, or that is outside of its "code date."  Ward has taken utterly illogical positions, such as claiming that any soda on the outside of a can is an illegal

1   "biohazard," including spillage that occurs during ordinary consumption.  But Ward

2   concedes that the general process of reclaiming good product from cases of

3   damaged product, including rinsing off spillage, is a common industry practice.

4   (Several of Defendants' employees will also testify to that fact.)  Ward also

5   concedes that it would take a minimum of "years" for a product to get so old as to be

6   a risk to a person's health.  Finally, Ward concedes that he has no basis to allege

7   how much product sold was past its "date code" and that he has no knowledge of the

8   company selling any products that posed a risk to consumers.  Regardless, once

9   again, Ward concedes that Mr. Laitinen took no action that affected Ward's working

10  conditions or took action against him for not following orders.

11          D.      Jones's Fourth Claim for Retaliation

12          Jones never informed the company that he was supposedly being

13  discriminated against.  Instead, as noted above, he informed Jack Saatjian merely

14  that he felt he was "starting over" rather than being treated preferentially on the

15  basis of his seniority, as he had come to expect.

16          Nor was Jones retaliated against.  The so-called retaliation consisted of the

17  conduct he claims he reported as discrimination.  By its very term, retaliation must

18  be conduct separate from and in response to a complaint.  No such retaliation

19  occurred given that Jones' purported "opposition" did not motivate Defendants to

20  take any "additional" action against him.

21          E.      Talton's and Valadez' Fifth and Sixth Claims

22          Talton and Valadez also claim that Defendants failed to engage in a good

23  faith interactive process or failed to attempt to make reasonable accommodations for

24  their alleged disabilities.  But there is no evidence that Defendants did not attempt

25  reasonable accommodations for Talton or Valadez.  Rather, the evidence is to the

26  contrary.  Ward testified that the company had procedures in place for an interactive

27  process and that it attempts to reasonably accommodate workers with restrictions.

28          As to Talton, the company did exactly what it was supposed to do.  Following

his return from a medical leave in August 2007, Talton initially presented his immediate superior (Pete Thielmann) with work restrictions precluding him from working in *any* available position.  Prior to that, Talton had contacted the business agent for his union, who he asked to alert the company that Talton would be returning to work with restrictions.  The company therefore knew beforehand that it did not have a position available for Talton.  Indeed, Talton concedes that he was unable to perform the essential functions of his job as a warehouseman, or even operate a forklift all day (as he evidently desired) under the medical restrictions initially imposed by his treating physician.

Far from refusing to discuss the matter, Talton's superior reviewed the work restrictions that Talton presented, and he and Mr. Laitinen informed Talton that no position was then available at the San Fernando facility that would accommodate those restrictions.  Talton's assertion that Defendants "unilaterally" concluded that no available position existed is really a claim that Defendants purportedly failed to provide a reasonable accommodation, not that they neglected to engage in a good faith interactive process.  By contrast, there is no evidence that Defendants refused to communicate with him on the subject.

When Talton returned to work next, it was without restrictions.  Talton cannot possibly argue that Defendants supposedly failed to "interact" with him after he presented a release stating that he no longer had any disabling work restrictions.

Talton's "failure to accommodate" claim is also belied by the evidence.  As noted above, when he returned from medical leave in August 2007, Talton initially presented a manager with work restrictions precluding him from working in any available position.  Defendants have no liability for disability discrimination because an employer is only obligated to reassign an employee to another position within the company if there is an existing, vacant position for which the plaintiff is qualified.  Defendants were not required to eliminate essential elements of the job.

Talton's related contention that Defendants implemented "an illegal 100%

DEFENDANTS' MEMO. OF CONTENTIONS OF FACT AND LAW

1   healed policy" is thoroughly belied by his testimonial admissions.  Moreover, the

2   undisputed evidence demonstrates that Defendants regularly accommodate

3   employees when they return from medical leave with work restrictions, whenever

4   Defendants are able to do so.

5        It also remains undisputed that Talton later asked his doctor to release him

6   without restrictions, and told no one at the company that he had instructed his doctor

7   to do so.  Talton also concedes that no one from the company asked him to do so, or

8   knew that he was doing so.  Then, when Talton returned to work with his doctor's

9   release, Defendants still required him to undergo a separate medical exam, which he

10  also passed without work restrictions.  Talton never told his supervisors that any

11  disability made him physically incapable of doing the work that was subsequently

12  assigned to him, but instead stated only that he was "too old."  Regardless, Talton

13  thought himself physically capable of doing the work.  Thus, Talton lacks any claim

14  for failure to accommodate because he presented a release to his employer, without

15  any restrictions.  His suggestion that Defendants should have disbelieved his fake

16  release because they knew his "checkered medical history" is irrelevant.

17       Valadez' disability discrimination claims are similarly unfounded.  Valadez

18  was cleared by his workers' compensation doctor to return to work with restrictions.

19  Valadez understood that he had the right to choose his own treating doctor.

20  Moreover, Valadez was invited to return to work by Laitinen (contrary to the alleged

21  scheme to get rid of him that Plaintiffs allege).  Valadez did not tell the doctor that

22  he could not do modified work, and he never complained to anyone at the San

23  Fernando facility that he was physically incapable of performing the work assigned

24  to him.  Valadez concedes he was able to perform the work assigned to him, so long

25  as he was careful.  Valadez further concedes that he would have refused to

26  undertake any work that he believed would injure him.

27       Thus, Valadez concedes that he was physically able to return to work.

28  Valadez admits that he never undertook an assignment he thought would cause him

1  to be injured, and that he would have refused to do any work that he believed might

2  cause him injury.  To be sure, Defendants cannot be held liable for discriminating

3  against an employee on the basis of disability, when that employee admits he was

4  not disabled and that he never undertook (and therefore was not given) an

5  assignment that would injure him.

6       Moreover, Valadez has no support for his novel theory that Defendants

7  engaged in wrongdoing simply because he thought his job would be in jeopardy had

8  he refused to return to work.  That is also an invented concern:  he admits no one

9  *ever* threatened him, let alone with termination of his employment.

10  **IV.**   **SUMMARY OF DEFENDANTS' AFFIRMATIVE DEFENSES**

11       In the interest of judicial economy, Defendants have abandoned all of their

12  affirmative defenses except for:

13       First Affirmative Defense:  Plaintiff Talton's claims for relief are barred by

14  the doctrine of after-acquired evidence.

15       Second Affirmative Defense:  Plaintiffs' claims for relief are barred in part by

16  estoppel.

17       Third Affirmative Defense:  Plaintiffs' claims for relief are barred in part by

18  the doctrine of res judicata.

19       Fourth Affirmative Defense:  Plaintiffs' first through fourth claims for relief

20  are barred in part by workers' compensation preemption (that is, that the WCAB has

21  exclusive jurisdiction to hear claims concerning Plaintiffs' alleged industrial

22  injuries).

23       Fifth Affirmative Defense:  Plaintiff Talton's fifth claim for relief is barred by

24  the doctrine of unclean hands.

25       Sixth Affirmative Defense:  Plaintiffs' first through fourth claims for relief

26  are barred in part by settlement and release.

27       Seventh Affirmative Defense:  Plaintiffs' first and second claims for relief are

28  barred in part by the applicable statute of limitations.

## V.     ELEMENTS OF DEFENDANTS' AFFIRMATIVE DEFENSES

### A.     Affirmative Defense of After-Acquired Evidence

To prevail on their defense of after-acquired evidence, Defendants must prove:

      (1)    That the Plaintiff engaged in misconduct;

      (2)    That the Plaintiff's misconduct was sufficiently severe that Defendants would have discharged him because of that misconduct alone had Defendants known of it; and

      (3)    That Defendants would have discharged the Plaintiff for his misconduct as a matter of settled company policy.

See CACI 2506.

### B.     Affirmative Defense of Estoppel

To prevail on their defense of estoppel, Defendants must prove:

      (1)    That the plaintiff's present position is clearly inconsistent with his original position;

      (2)    That the plaintiff successfully persuaded the workers' compensation court of the earlier position; and

      (3)    That allowing the inconsistent position would allow the plaintiff to derive an unfair advantage or impose an unfair detriment on the defendants.

See Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 & n.3 (9th Cir. 1996) (plaintiff could not testify at deposition that she was completely disabled, when that contradicted statements on state disability benefit and Social Security Administration claim forms); In re Clawson, 434 B.R. 556, 566 (N.D. Cal. 2010).

### C.     Affirmative Defense of Res Judicata

To prevail on their res judicata defense, Defendants must prove:

      (1)    The decision in the prior proceeding is final and on the merits;

     (2)     The present proceeding is on the same cause of action as the prior proceeding; and

     (3)     The parties in the present proceeding or parties in privity with them were parties to the prior proceeding claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding.

See Planning and Conservation League v. Castaic Lake Water Agency, 180 Cal. App. 4th 210, 226, 103 Cal. Rptr. 3d 124 (2009).  California law identifies a cause of action as the violation of a single primary right.  Id.  The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based.  Id.

     D.     Affirmative Defense of Workers' Compensation Preemption (Exclusive Remedy)

To prevail on their workers' compensation preemption defense, Defendants must prove the following:

     (1)     Plaintiff was Defendants' employee;

     (2)     Plaintiff's injury occurred while he was performing a task for or related to the work Defendants hired him to do.

See CACI 2800; Gibbs v. Am. Airlines, Inc., 74 Cal. App. 4th 1, 14, 87 Cal. Rptr. 2d 554 (1999) ("[a] defendant need not plead and prove that it has purchased workers' compensation insurance where the plaintiff alleges facts that otherwise bring the case within the exclusive province of workers' compensation law").  In addition, in its May 23, 2011 summary judgment order, the Court held that a Plaintiff may negate this defense as to the physical and psychological injuries he allegedly suffered if he proves that Defendants' alleged discrimination was a

1   substantial factor in the subsequent industrial injury.[1]  <u>See</u> <u>Huffman v. Interstate</u>

2   <u>Brands Cos.</u>, 121 Cal. App. 4th 679, 696 (2004).  Defendants respectfully disagree

3   with the Court's interpretation of the exclusive remedy provision of California's

4   workers' compensation law.

5           E.      <u>Affirmative Defense of Unclean Hands</u>

6           The defense of unclean hands demands that a plaintiff act fairly in the matter

7   for which he seeks a remedy.  <u>Kendall-Jackson Winery, Ltd. v. Super. Ct.</u>, 76 Cal.

8   App. 4th 970, 978, 90 Cal. Rptr. 2d 743 (1999).  The misconduct at issue need not

9   be a crime or an actionable tort:  Any conduct that violates conscience, or good

10  faith, or other equitable standards of conduct is sufficient cause to invoke the

11  doctrine.  <u>Id.</u> at 979; <u>see</u> <u>also</u> <u>Camp v. Jeffer, Mangels, Butler & Marmaro</u>, 35 Cal.

12  App. 4th 620, 638, 41 Cal. Rptr. 2d 329 (1995) ("the doctrine of unclean hands may

13  apply to legal as well as equitable claims").  The doctrine of unclean hands closes

14  the courthouse doors to a party "tainted with inequitableness or bad faith relative to

15  the matter in which he seeks relief, however improper may have been the behavior

16  of the defendant."  <u>Camp</u>, 35 Cal. App. 4th at 638.  Unclean hands in connection

17  with the matter in controversy is a complete defense to a plaintiff's claims.  <u>See</u>

18  <u>Dickson, Carlson & Campillo v. Pole</u>, 83 Cal. App. 4th 436, 446, 99 Cal. Rptr. 678,

19  686 (2000).

20          F.      <u>Affirmative Defense of Settlement and Release</u>

21          To prevail on their defense of settlement and release, Defendants must prove

22  that the company entered into a valid contract with a Plaintiff releasing a claim.

23

24  _____

25      [1] As the Court is already aware, Defendants contend that the alleged industrial
    injuries are "preempted" as a matter of law and should be barred at trial, pursuant to
26  controlling California authority, including the Court of Appeal's decision in
    <u>Huffman</u>.  Defendants respectfully submit that permitting the jury to decide the
27  question as a factual matter will result in reversible, prejudicial evidentiary error.

28

1  See Vahle v. Barwick, 93 Cal. App. 4th 1323, 1328-29 (2001) ("[r]elease

2  agreements are governed by the generally applicable law of contracts").

3          G.      Affirmative Defense of Statute of Limitations

4          A plaintiff alleging discrimination under FEHA must file a "Complaint of

5  Discrimination" with the California Department of Fair Employment and Housing

6  within one year of the complained of misconduct (and then must file suit within one

7  year of receipt of a "right to sue" letter issued by the Department).  See Cal. Gov't

8  Code § 12960.  Evidence of alleged misconduct outside the limitations period is

9  barred.  See, e.g., Alch v. Super. Ct., 122 Cal. App. 4th 339, 377, 19 Cal. Rptr. 3d

10  29 (2004) ("Certainly, the employers and the agencies would not be liable for any

11  discriminatory refusal to refer or refusal to hire that occurred more than one year

12  before the complaints in these cases were filed with the Department of Fair

13  Employment and Housing."); see also Shimozono v. May Dep't Stores Co., 2002

14  WL 34373490, at *13 (C.D. Cal. Nov. 20, 2002) ("The court will not consider

15  evidence outside the statute of limitations in determining if Plaintiffs are entitled to

16  damages.").

17  **VI.    DEFENDANTS' KEY EVIDENCE IN SUPPORT OF THEIR**

18         **AFFIRMATIVE DEFENSES**

19         A.      Affirmative Defense of After-Acquired Evidence

20         See section VI.E., below.

21         B.      Affirmative Defense of Estoppel

22         To the extent that a Plaintiff has previously contended during a workers'

23  compensation proceeding that an injury was caused by work and within the ordinary

24  scope of business (in order to assure that the claim be accepted), he cannot deny the

25  admissions here.

26

27

28

C.     Affirmative Defense of Res Judicata

Ward, Valadez, Suhay and January were all compensated by Defendants for their workers' compensation claims, which addressed the same injuries asserted in this action.[2]

- Ward: On March 14, 2008, Ward and Defendants entered into a Workers' Compensation Appeals Board "Compromise and Release" of his "Psyche, Hypertension, Stomach, Sexual Dysfunction, Sleeplessness, Anxiety & Chest Pain" caused by work for the period from January 1, 1999 through April 13, 2007.

- Valadez: Valadez settled his workers' compensation claims earlier this year for $200,000.  The settlement and release addressed all of the physical, psychological, pay and medical expense claims that Valadez alleges in this case.

- Suhay: All of Suhay's physical injuries alleged in this case were submitted to and paid by Defendants in the workers' compensation system. All of the medical bills associated with those injuries have been paid by Defendants. Suhay also resolved his claim for "lost pay" in the workers' compensation system.

- January: January entered into a Compromise and Release that settled all of his claims for the injuries that he alleges here, in his workers' compensation action for those same claims.  He was paid $30,000 in settlement and, in addition, the company agreed to take responsibility for resolving any liens that January's workers' compensation doctors had against his settlement.  The Compromise and Release was approved by a Workers' Compensation Appeals Board Administrative Law Judge, who retains jurisdiction over it.

D.     Affirmative Defense of Worker's Compensation Preemption (Exclusive Remedy)

It is undisputed that Plaintiffs were employed by Defendants and that Defendants were self-insured under the workers' compensation statute during the

---

[2] As for the remaining two plaintiffs, Jones abandoned his physical injury claims in this action and Talton's worker's compensation claims are still pending.

DEFENDANTS' MEMO. OF CONTENTIONS OF FACT AND LAW

relevant period.  Furthermore, all Plaintiffs concede that their claimed injuries occurred while they were performing a task for or related to the work Defendants hired them to do, and that the work that allegedly caused their injuries was performed in the ordinary course.  Indeed, each of them has filed workers' compensation claims for the same purported injuries that are at issue here.

Plaintiffs cannot escape the workers' compensation bar by pointing to their allegations of age discrimination.  The evidence will demonstrate that the injuries they are complaining of would have occurred regardless of the reason they were assigned the work.  In fact, one of Plaintiffs' own designated experts agrees.  Dr. Kanter is a licensed physician who oftentimes is engaged to perform Agreed Medical Evaluations for workers' compensation claims.  In his role as an AME, it is Dr. Kanter's duty to determine the cause of the complained of injury and make an assessment as to what percentage of the injury is caused by the job, and therefore subject to workers' compensation, as distinct from a cause that would take the injury outside the workers' compensation system.   In his deposition, Dr. Kanter testified that various injuries at issue were caused solely by work.

Plaintiffs concede that industrial accidents are an unfortunate reality of working in a warehouse like the one in San Fernando, and that the very nature of the work means that there is a real prospect of injury to all employees.  For example, Ward testified at deposition that just by assigning an employee a task in the warehouse—from driving a forklift to any other job—the employee is put at risk of injury.  Indeed, the Non-Management Plaintiffs have a lengthy history of industrial injuries suffered while working for the company, which long predate Laitinen's purported discriminatory plan.  Moreover, nearly all Plaintiffs—and their treating physicians—have testified that the injuries they allege here were suffered in the ordinary course of work.  Plainly, it is the job that caused Plaintiffs' claimed injuries, not any alleged discriminatory intent to injure them.

E.     Affirmative Defense of Unclean Hands

In August 2007, Talton, without any request from the company, asked his workers' compensation doctor to release him to return to work from his 2005 injury. The doctor told Talton that he needed to wait a few more weeks, at which time he would examine Talton to see if he could return to work.  Talton was subsequently examined and released by his doctor to return to work with restrictions.  When Talton presented his release with restrictions, he was informed that the company did not have a position open that could accommodate his restrictions, and that he could return when he was well enough to work without restrictions.  Talton concedes that he could not have operated a forklift with the restrictions he was given.

No one asked Talton to have his restrictions removed when he in fact was unable to work without restrictions.  Talton was only told by his supervisor that once he was fully recovered, "we'll be glad to have you back."

Although he knew that it was improper, Talton insisted that his own doctor release him to return to work without restrictions.  The doctor changed his release simply upon the asking, although the doctor conducted an examination before doing so.  Talton later presented the altered release to the company, which required him to undergo an additional examination at Valley Occupational Clinic before he could return to work; Valley Occupational cleared him to return to work without restrictions.  Talton did not tell anyone at the company that he had asked his doctor to alter his release.  Talton admits that the company would not have allowed him to return to work if it had known he had asked his doctor to alter the release.  In any event, Talton testified that he was physically capable of doing the work assigned to him when he returned without restrictions, including building loads.

F.     Affirmative Defense of Settlement and Release

See section VI.C., above.

G.   Affirmative Defense of Statute of Limitations

Plaintiff Ward has disclosed his intent to present evidence at trial of various supposed "adverse employment actions" allegedly suffered well beyond the one-year limitations period.  Specifically, he filed his FEHA complaint on March 24, 2008.  Therefore, at best, any evidence of supposed misconduct against Ward prior to March 24, 2007 is barred by the statute of limitations.

## VII.   **JURY RIGHT**

Plaintiffs timely served a jury demand.  Therefore, all issues pertaining to Plaintiffs' claims are to be tried to the jury.

Even though it is "equitable" in nature, the Court has discretion to submit Defendants' unclean hands defense to the jury too.  See Unilogic, Inc. v. Burroughs Corp., 10 Cal. App. 4th 612, 621-23, 12 Cal. Rptr. 2d 741 (1992).  Defendants respectfully request that the Court submit the unclean hands defense to the jury for determination.

## VIII.  **EVIDENTIARY ISSUES**

Defendants have filed motions *in limine* on the following subjects:

- Motion *in Limine* No. 1.  To exclude plaintiffs' claimed industrial injuries as irrelevant and prejudicial in light of Huffman v. Interstate Brands Cos., 121 Cal. App. 4th 679 (2004); Pichon v. PG&E Co., 212 Cal. App. 3d 488 (1989); and similar authority.

- Motion *in Limine* No. 2.  To exclude evidence of plaintiffs' claimed injuries which previously have been submitted to the workers' compensation system.

- Motion *in Limine* No. 3.  To exclude evidence of sham deposition corrections submitted by various plaintiffs.

- Motion *in Limine* No. 4.  To limit the testimony of plaintiffs' alleged "non-retained" treating physicians, and to exclude the testimony of several of those physicians due to discovery misconduct.

- Motion *in Limine* No. 5.  To exclude as irrelevant and prejudicial any evidence of purported discrimination against third-parties currently or previously employed by the Defendants.

- Motion *in Limine* No. 6.  To exclude evidence of purported age discrimination outside the one-year limitations period for a FEHA claim.

- Motion *in Limine* No. 7.  To exclude evidence of hearsay statements purportedly uttered by third-party employees concerning Laitinen's alleged discriminatory plan.

- Motion *in Limine* No. 8.  To exclude evidence from certain Plaintiffs who refused to testify at deposition concerning various topics.

- Motion *in Limine* No. 9.  To limit the testimony of Karen Smith, plaintiffs' proposed damages expert, on the basis that she lacks foundation for several of her opinions, that her opinions are speculative, and/or her opinions should be barred by Fed. R. Evid. 702.

- Motion *in Limine* No. 10.  To exclude Jeffrey Nelken, plaintiffs' proposed "food safety" expert, on the basis that he lacks foundation for his opinions, that his opinions are speculative, and/or his opinions should be barred by Fed. R. Evid. 402, 403 and 702.

## IX.   ISSUES OF LAW

### A.   Whether Plaintiffs Suffered an "Adverse Employment Action" as a Matter of Law

Plaintiffs were merely assigned different duties within the bounds of their employment, and those reassignments affected all employees.  "A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient."  Akers v. County of San Diego, 95 Cal. App. 4th 1441, 1455, 116 Cal. Rptr. 2d 602 (2002).  Requiring an employee to perform work within his job responsibilities or failing to give the employee preferential treatment is not an

1  "adverse employment action."  Id. at 1457; see also Malais v. Los Angeles City Fire

2  Dept., 150 Cal. App. 4th 350, 358, 58 Cal. Rptr. 3d 444 (2007) ("None of the cases

3  cited above … found adverse employment actions in transfers that involved working

4  in assignments the employee preferred less than other assignments but with equal

5  pay, benefits, promotional opportunities, and no hostile environment.  None of the

6  cases supports the proposition that assignment to a less-preferred position alone

7  constitutes an adverse employment action."); Thomas v. Dep't of Corrections, 77

8  Cal. App. 4th 507, 512, 91 Cal. Rptr. 2d 770 (2000) (general assertions of being

9  "assigned more duties than other employees" is insufficient as a matter of law).  The

10  Non-Management Plaintiffs' allegations amount to a complaint that they should be

11  given preferential treatment solely on the basis of seniority.  That is not a cognizable

12  discrimination claim under FEHA, and the Court should preclude plaintiffs from

13  pursuing it.

14      B.      Whether Ward's Third Claim for Relief Can Be Founded on

15              Defendants' Beverage Practices

16      Ward's Third Claim for Relief requires the existence of a public policy that

17  Defendants supposedly violated.  In Tameny v. Atl. Richfield Co., 27 Cal. 3d 167,

18  164 Cal. Rptr. 839 (1980), the California Supreme Court recognized an exception to

19  the at-will employment relationship where an employer terminates its employee in

20  violation of "public policy."  Tameny claims generally fall into four categories:

21  (1) the employee refused to violate a statute; (2) the employee was performing a

22  statutory obligation; (3) the employee was exercising a statutory right or privilege;

23  or (4) the employee reported an alleged violation of a statute of public importance.

24  See Phillips v. Gemini Moving Specialists, 63 Cal. App. 4th 563, 570, 74 Cal. Rptr.

25  2d 29 (1998).  Ward's unreasonable belief that he was being asked to violate a

26  statute cannot give rise to a constructive discharge claim.  See, e.g., DeSoto v.

27  Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (affirming entry of

28  summary judgment against California wrongful termination "claim by an employee

1  who refuses to work based on his erroneous belief that what he was asked to do was

2  a violation of California law").  Specifically, Ward cannot base his <u>Tameny</u> claim

3  on the theory that spilling soda on a beverage can immediately renders that can

4  "unsafe" under the California Health Code.  <u>See</u> CACI 2402 cmt. ("The judge

5  should determine whether the purported reason for plaintiff's resignation would

6  amount to a violation of public policy.").

7        C.   <u>The Court Should Bar Evidence of Claimed Injuries Submitted by</u>

8            <u>Plaintiffs to Workers' Compensation</u>

9        The Court should either bar Plaintiffs' claimed industrial injuries as

10  preempted by the workers' compensation act or, at a minimum, require Plaintiffs to

11  demonstrate that those injuries have not previously been submitted to workers'

12  compensation.  The collateral bar rule does not apply in this case because it is

13  undisputed that the benefits and settlements paid to Plaintiffs in workers'

14  compensation were paid solely by Defendants, who are self-insured.  As argued in

15  Defendants' motion <i>in limine</i> no. 2, Plaintiffs cannot recover twice for the same

16  injury.

17        D.   <u>Whether Talton's Disability Claims Are Barred By Unclean Hands</u>

18        As noted above, the Court must determine whether to submit Defendants'

19  equitable defense of unclean hands to the jury.

20        E.   <u>Whether Plaintiffs May Call Forty Witnesses at Trial</u>

21        Plaintiffs have disclosed that they desire to call forty witnesses at trial.

22  Defendants respectfully submit that the Court should restrict Plaintiffs' presentation

23  or impose time limits on testimony.

24  **X.  <u>ATTORNEYS' FEES</u>**

25        Plaintiffs seek an award of attorneys' fees on all their claims for relief.

26  Defendants do not seek an award of fees.

27

28

1   DATED:  September 26, 2011   CRONE HAWXHURST LLP

2

3                                          By_____/s/_____

4                                               Gerald E. Hawxhurst
                                                Daryl M. Crone
5                                               Attorneys for Defendants
                                                The American Bottling Company, et al.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28