Gerald E. Hawxhurst (Bar No. 220327)
jerry@cronehawxhurst.com
Daryl M. Crone (Bar No. 209610)
daryl@cronehawxhurst.com
Joshua P. Gelbart (Bar No. 274021)
jgelbart@cronehawxhurst.com
CRONE HAWXHURST LLP
10880 Wilshire Blvd., Suite 1150
Los Angeles, California 90024
Telephone:  (310) 893-5150
Facsimile:   (310) 893-5195

Attorneys for Defendants
The American Bottling Company and
Dr Pepper Snapple Group, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROBERT M. WARD, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CADBURY SCHWEPPES BOTTLING GROUP, et al., <br><br> Defendants. | CASE NO. CV09-3279 DMG (CWx) <br><br> **DEFENDANTS' REPLY TO PLAINTIFFS' FIVE OFFERS OF PROOF RE: TESTIMONY OF "ME TOO" WITNESSES** |

**Introduction**

Defendants' motion *in limine* no. 5 seeks an order precluding Plaintiffs from calling various "me too" witnesses at trial. The Court directed Plaintiffs to submit offers of proof concerning those witnesses, and that Defendants could provide a written response to them. (See also Dkt. No. 144.) Defendants respectfully submit this single memorandum in response to Plaintiffs' five offers of proof (totaling 26 pages) in an effort to minimize the burden on the Court.

**Argument**

A trial court must carefully scrutinize the relevance of so-called "me too" evidence offered in support of an age discrimination claim. See Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 386-87 (2008). The only federal case Plaintiffs rely on is Obrey v. Johnson, 400 F.3d 691 (9th Cir. 2005), in which the plaintiff pursued a "pattern or practice" claim and, therefore, had to establish that racial discrimination was his former employer's standard operating procedure.[1] Id. at 693-94. Even though it was a "pattern or practice" case (unlike this case), the Ninth Circuit directed the trial court to carefully consider barring the proposed "me too" evidence of discrimination against third-parties because of the risk of unfair prejudice under Fed. R. Evid. 403. Id. at 698. The Ninth Circuit noted that such "me too" evidence is even more highly suspect in a case such as this one, which *doesn't* involve a "pattern or practice" claim: "anecdotal evidence of past discrimination … *might prove inadmissible in the typical case of individual discrimination.*" Id. (emphasis added).

---

[1] Plaintiffs also cite Johnson v. United Cerebral Palsy/Spastic Children's Foundation of Los Angeles and Ventura Counties, 173 Cal. App. 4th 740, 93 Cal. Rptr. 3d 198 (2009), and Pantoja v. Anton, 198 Cal. App. 4th 87, 129 Cal. Rptr. 3d 384 (2011), which were decided under the California Evidence Code. They are inapposite and not controlling here. In any event, those cases merely stand for the proposition that "me too" evidence isn't *per se* inadmissible under California law.

As the Court observed at the pretrial conference—and Plaintiffs' counsel conceded—this is *not* a "pattern or practice" case. (See Exhibit A (Pretrial Conference Tr.) at 21-23.) For that reason, Plaintiffs do not intend to offer any statistical evidence that would be corroborated by "me too" evidence. Moreover, any possible probative value of this testimony (and there is none) is vitiated by the fact that Mr. Ward and several other Plaintiffs intend to testify that they personally heard Richard Laitinen utter age-based statements in the summer of 2007, in support of their disparate treatment theory. Plaintiffs also have identified *forty* witnesses they desire to call at trial, even though the Court has limited the length of trial to ten days. Exclusive of the time required for jury selection, opening statements and closing argument, there is likely only to be eight days available for trial testimony. For these and the other reasons explained below, Plaintiffs should be barred from presenting testimony from any of the five proffered witnesses as well as from a sixth witness, Mike O'Leary, for whom Plaintiffs failed to provide an offer of proof.

## Mike O'Leary

Plaintiffs identified Mike O'Leary as a "me too" witness in the parties' Joint Trial Witness Time Estimate Form, submitted to the Court on October 14, 2011. (See Dkt. No. 139 at 5 (witness no. 32).) Nonetheless, Plaintiffs have failed to submit an offer of proof with respect to Mr. O'Leary's proposed testimony. Given that Plaintiffs have abandoned their disclosure of Mr. O'Leary as a potential witness, he should be barred from testifying at trial.

## LaMont Perman

Plaintiffs' offer of proof concerning LaMont "Mickey" Perman—and the declaration they have attached to that offer—demonstrate why permitting him to testify at trial would be unfairly prejudicial to Defendants and constitute an undue waste of time. See Fed. R. Evid. 403. Mr. Perman *does not* identify any specific discriminatory misconduct. Rather, he claims that in 2004 and 2005, "I *felt* that my age was a factor in this constant criticism, and that Chris Ross and Taylor Marcus

1  were trying to force me to quit due to my age." (Perman Decl. ¶ 4 (emphasis
2  added).) To state the obvious, whatever Mr. Perman "felt" motivated his
3  supervisors' criticism of his job performance in 2004 and 2005 lacks foundation and
4  is entirely irrelevant to any purported discrimination at issue in this case. Cf. Akers
5  v. County of San Diego, 95 Cal. App. 4th 1441, 1455, 116 Cal. Rptr. 2d 602 (2002)
6  ("oral or written criticism of an employee or transfer into a comparable position
7  does not meet the definition of an adverse employment action under FEHA").

8        Likewise, Mr. Perman's general observation that unidentified "older members
9  of management at other locations were leaving the company" in the 2004/2005
10 timeframe is plainly irrelevant to events at the San Fernando facility in 2007. This
11 is not a "pattern or practice" case, the events described are beyond the statute of
12 limitations period, and Mr. Perman plainly does not have personal knowledge of
13 why other persons at other branches (of any age) left the company. (See Perman
14 Decl. ¶ 5.)

15       Further, allowing Mr. Perman to testify that he complained to Human
16 Resources about his own employment situation and that he never heard back (see id.
17 ¶¶ 6-7) would result in a mini-trial on Mr. Perman's own employment situation,
18 which again is entirely irrelevant and beyond the statute of limitations. Specifically,
19 Mr. Perman's proffered testimony pertains to events occurring *before* March 2007,
20 which is outside the statute of limitations applicable to this case. (See Defs.' Mot. in
21 *Limine* No. 6.) Plaintiffs' counsel already has conceded that they are not pursuing
22 claims based on conduct that predates March 2007:

23       THE COURT: Well, I guess the problem I'm having is that there isn't
24       anything that occurred before 2007 that constitutes an adverse
25       employment action, right?
26       MR. SOTTILE: That's not by itself, no.
27       THE COURT: So, you're not claiming that there was anything that
28       occurred or that was implemented by Mr. Marcus that gives rise to

1    damages in its own right.
2            MR. SOTTILE: That's right. […]
3    (See Hr'g Tr. (Ex. A) at 28:1-9.)  The pre-March 2007 events concern only Mr.
4    Ward, but he is not pursuing (and cannot pursue) claims based on those events.  Yet
5    Plaintiffs contend they should be allowed to present evidence of several years' of
6    purported "discriminatory acts" by the Defendants before March 2007 (and well
7    before Mr. Laitinen was hired in April 2007) that would obviously irreparably
8    prejudice Defendants and would likely confuse the jury.  It also would dramatically
9    lengthen trial because—if the testimony were allowed—Defendants would be
10   allowed to present evidence showing the allegations are not true, that they are taken
11   out of context, and to present evidence of Mr. Perman's (and Ward's) failed
12   performance at the company, all during a period that predates the limitations period.
13           The Court should preclude Mr. Perman from testifying at trial.

## Michael Lemos

15           Michael Lemos' declaration also fails to identify any specific discriminatory
16   misconduct directed at him.  He simply states that, when "management" allegedly
17   gave him "extra hard" work, he "believe[d] this was done in order to force me to
18   quit and due to my age."  (Lemos Decl. ¶ 4.)  Whatever Mr. Lemos "believed" about
19   Defendants' intentions lacks foundation and is irrelevant to any purported
20   discrimination at issue in this case, especially since this is not a "pattern or practice"
21   case.  Mr. Lemos' contention that he saw his own name on a "list of five people to
22   be fired" is similarly irrelevant to Plaintiffs' claims.  Allowing Mr. Lemos to testify
23   that his name was on some list would mean that Defendants would be allowed to
24   present evidence of Mr. Lemos' poor job performance, including the reasons why he
25   was separated from the company (which stem from Mr. Lemos' misconduct),
26   leading mini-trials over a "list" and Lemos' performance at the company.
27           Mr. Lemos' purported observation that, after Richard Laitinen became Branch
28   Manager of the San Fernando facility in 2007, several of the new drivers hired at the

facility were "younger" (see id. ¶ 6), is wholly irrelevant and without any foundation.  Again, this is not a disparate impact case and, even if it were, Mr. Lemos has no foundation for his supposed observation—he does not provide the ages of any supposed new hires, nor does he know anything about the pool of applicants, such as their age, job qualifications or ability to pass the required background check.  Again, Mr. Lemos' testimony would lead to a trial-within-a-trial.

Mr. Lemos' purported observations that he thought "older drivers" were getting "harder routes" and that "the older forklift drivers" were "being made to throw loads" also lack foundation.  Lemos doesn't claim that he was aware of all assignments on all shifts or that he is aware of all of the various reasons why assignments were made (let alone who gave the assignments).  Even if he could demonstrate a proper foundation, the proffered testimony (as to the Plaintiffs' assignments) would be entirely duplicative of what the *six* Plaintiffs in this case say they will testify about at trial.  There is no reason to permit additional witnesses to testify to the same minimally probative "observations."  See U.S. v. Marabelles, 724 F.2d 1374, 1381 (9th Cir. 1984) (the trial court may exclude "relevant, but cumulative, evidence"); Sugar Ass'n, Inc. v. McNeil-PPC, Inc., 2008 WL 4755611, at *5 (C.D. Cal. Jan. 7, 2008) (granting motion to exclude duplicative testimony: "Based on the time estimates for trial the Court will likely be excluding all duplicative testimony."); U.S. v. Yagman, 2007 WL 4532670, at *6 (C.D. Cal. May 11, 2007) ("In light of the jury instruction and the testimony of percipient witnesses, Golden's testimony on these issues is likely to be cumulative and result in undue delay and a waste of time. Therefore, the Court finds this testimony should be excluded under Rule 403.").

Finally, Mr. Lemos' claim that he delivered "expired" product to a customer, and that John Wonderlin (the Operations Manager of the San Fernando facility after Mr. Ward quit) told him it was an "accident"—even if true—is irrelevant to Ward's

so-called <u>Tameny</u> claim.  First of all, Ward has not identified a statutory or constitutional provision that prohibits a beverage company from selling out-of-code product to a customer at a discounted price.[2]  Plaintiffs instead assert that doing so was a violation of "industry best practices," which, as the Court observed at the pretrial conference, is irrelevant to Ward's <u>Tameny</u> claim as a matter of law:

> THE COURT: Well, the problem I have with that is that a <u>Tameny</u> claim is for violation of statute or the Constitution, and when you get into whether or not best practices or policies were followed, that's not really making the mark.  And you can, I mean, you can have dueling experts about whether or not the policies and practices were followed or not, and that still doesn't get the trier of fact to question whether or not a statute or the constitution was violated or that Mr. Ward thought that a statute or Constitution was violated.  It's going to be that a policy or practice wasn't followed.
>
> MR. SOTTILE: Well, these -- the industry standards are predicated on the Health and Safety Code that says:  Thou shall not send out adulterated food.  And this witness would opine that in his professional opinion, this deviates from that standard and it sheds light on the illegality which the plaintiff will contend was occurring.
>
> THE COURT: Well, it's one thing if he was going to testify that they were

---

[2] Mr. Ward conceded that "date codes" are not dates by which a product becomes unsafe; date codes are a quality assurance device to help ensure proper "taste and carbonation." (<u>See</u> Ward Depo. Tr. (Ex. B) at 535:18-536:6.)  To be sure, Ward testified that the "minimum amount of time" it would take for a product to possibly become harmful is "in the years." (<u>See</u> <u>id.</u> at 536:7-537:9.)  Realizing that selling product beyond its date code is not a violation of any law or public policy, Ward abandoned the claim, testifying that "[t]he out of date *was not* the issue.  *It was the product on the outside*." (<u>Id.</u> at 537:15-21 (emphasis added).)  Yet Ward conceded the common sense conclusion that rinsing spilled soda from a can is "an appropriate and acceptable business practice," and that because none of the products distributed by the company required refrigeration, they could not spoil because of lack of refrigeration. (<u>See</u> <u>id.</u> at 512:12-513-10.)

|   |   |   |
|---|---|---|
| | | sending out, let's say, adulterated meat that, you know, had some sort of toxic chemical on it or something of the sort. But if we're talking about the fact that the packages were broken that there were stickiness or stains on the bottles, I don't think that gets us there. |
| | MR. SOTTILE: | But, Your Honor, we submit it does. Because this substance is sugar based, and the evidence would be that it creates a breeding ground for bacteria and, in fact, can lead to injury to the people that consume products that are bathed in this kind of leakage as it's called in the industry. |
| | THE COURT: | But we're talking about outside a bottle, right? |
| | MR. SOTTILE: | Yes, but what they were doing is selling this stuff at a discount. Historically it had been destroyed. That was the practice, and that Mr. Ward wasn't involved in that. |
| | THE COURT: | I understand that, and I understand you're talking about best practices and policies, but I'm still trying to find that statute or constitution that it's underpinning of a Tameny claim. |

(See Hr'g Tr. (Ex. A) at 44-46; cf. Ward Deposition Testimony, supra n.2.)

Nor would Mr. Lemos' *own* delivery of supposedly expired product have relevance to *Ward's* claim that he was constructively terminated because he "reasonably believed" that *he* (Ward) was being asked by Richard Laitinen to violate the law. To be sure, by Mr. Lemos' own account, the delivery of the product was an "accident." The Court should prevent Mr. Lemos from testifying at trial.

## **Amarjeet Singh**

According to the proffer, Mr. Singh is expected to testify that he observed older drivers being "harassed" by being given "harder routes"; that "younger" drivers were being hired; and that forklift drivers were being made to "throw cases." (See Singh Decl. ¶¶ 3, 6, 8.) As with Mr. Lemos, all of those purported observations are either irrelevant or unnecessarily duplicative and should therefore be barred pursuant to Fed. R. Evid. 403. For example, they are irrelevant to

- 7 -

Plaintiffs' disparate *treatment* claim based on purported *direct* evidence of discriminatory intent. Furthermore, as a former driver (he was not the dispatcher), Mr. Singh does not have any foundation to testify as to why other drivers were given certain routes or even what those routes were. He likewise has no basis for his conclusion that assignments to warehouse workers were made to illegally "harass" them.

Mr. Singh's observation concerning "expired" product being sold to customers is barred for the same reasons discussed above. In addition, Mr. Singh plainly lacks foundation to testify concerning what product was or was not purportedly "contaminated." (Singh Decl. ¶ 7.) Nor have Plaintiffs ever disclosed their intent to offer an expert opinion from him at trial, pursuant to Rule 26(a)(2). (As the Court may recall, Plaintiffs' only purported "industry expert" was Jeffrey Nelken. At the pretrial conference, the Court indicated that it intends to grant Defendants' motion *in limine* no. 10 and bar Mr. Nelken from testifying at trial.)

Moreover, Mr. Singh claims that John Wonderlin stated "he did not have a problem with me, but that he did have a problem with these guys," pointing to a list of five of the "older" truck drivers at the San Fernando facility (including Mr. Lemos). (Singh Decl. ¶ 4.) Even if true, that testimony is not probative of any issue in this case. Mr. Wonderlin's statement that he had "a problem" with certain individuals is benign—it certainly is not probative of an intent to discriminate. Allowing this evidence would simply lead to a mini-trial about why Mr. Wonderlin had a "problem" with other employees (assuming it was even said).

Mr. Singh also proposes to testify that he heard John Wonderlin say about another employee, Marvin Anding: "This old sucker is no good, he cannot even do a drop." (Singh Decl. ¶ 5.) However, Mr. Anding is not a plaintiff in this case. Again, allowing Mr. Singh to testify about Mr. Wonderlin's purported comment would invite a mini-trial on whether it was said, about whether Mr. Anding has ever suffered an adverse employment action caused by unlawful discrimination, and what

Mr. Wonderlin intended if he in fact uttered the phrase.  (Interestingly, Plaintiffs have not presented any declaration or deposition testimony from Mr. Anding.)

Finally, Mr. Singh's belief that Robert Ward was a "good and fair manager" (Singh Decl. ¶ 2) is irrelevant.  Mr. Singh was a subordinate of Mr. Ward, so what he thought of Mr. Ward as his boss does not make the existence of discrimination *against* Mr. Ward more or less likely.  Furthermore, Mr. Ward's counsel has admitted that Mr. Ward has abandoned any claims based on conduct occurring before March 2007.  And, as the Court may recall, Mr. Ward only worked at the San Fernando facility for roughly three weeks between March 2007 and his voluntary resignation later that year.  All that remains of Mr. Ward's claims is his contention that Richard Laitinen purportedly "required" him to violate the law in June and July of 2007, and that Mr. Ward suffered a "wrongful constructive termination."  Mr. Singh should be barred from testifying at trial.

### Felipe Estrada

Mr. Estrada never worked in San Fernando as either a delivery driver or a warehouseman.  Mr. Estrada worked in the field as a salesman.  (Estrada Decl. ¶ 2.)  There is no allegation that Mr. Estrada (or any other any salesperson) was subjected to the purported age discrimination that is at issue in this suit.

Instead, Mr. Estrada intends to testify that Mr. Laitinen directed him to sell "expired" product.  (Estrada Decl. ¶ 4.)  But as explained above, his testimony on that subject is entirely irrelevant because only Laitinen's purported instructions *to Robert Ward* are relevant to Ward's subjective "reasonable belief" regarding whether *he* was being asked to violate the law (for purposes of his Tameny claim).  That is especially true given that, as noted above, the purported repackaging and sale of "expired" beverages to Defendants' customers would have violated no law.

Plaintiffs also want to have Mr. Estrada testify that Richard Laitinen supposedly made "comments about employees" such as "we need new blood," "there is going to be a new regime," and "if you are not with us you are against us."

(Estrada Decl. ¶ 5.)  Courts have held that the statements that Mr. Estrada attributes to Mr. Laitinen are not even evidence of discrimination.  See, e.g., Fortier v. Ameritech Mobile Communications, Inc., 161 F.3d 1106, 1113 (7th Cir. 1998) ("'[N]ew blood' means a change.  These comments, whether reviewed in the abstract or in the context of this case, simply cannot support a determination of age bias.") (collecting cases).  To be sure, Mr. Estrada doesn't claim that Mr. Laitinen's comments were directed at workers over the age of 40, as opposed to the workforce in general.  Mr. Estrada should be barred from testifying at trial.

### **Mark Healy**

Mr. Healy was an "inventory coordinator" at the San Fernando facility. (Healy Decl. ¶ 2.)  His declaration does not allege that he was the subject of age discrimination; he is not a plaintiff in this case and he was not a driver or forklift operator.  Instead, Mr. Healy also proposes to testify that Mr. Laitinen "instituted a policy" of selling "expired" product.  (Healy Decl. ¶ 5.)  For the reasons stated above, that testimony would be entirely irrelevant to Ward's Tameny claim.

Plaintiffs also claim that Mr. Healy would testify that "[i]t appears to me that Richard Laitinen is trying to get rid of the older longer term employees…."  (Healy Decl. ¶ 6.)  That observation, and his observation that some of the older drivers "have left, and they have been replaced with newly hired younger drivers," are also irrelevant, for the reasons described above.  Assuming that Mr. Healy had the foundation to provide testimony about who was hired (and he obviously cannot), whatever probative value that "evidence" might have in support of a *disparate impact* case, it is irrelevant to Plaintiffs' *disparate treatment* case, which is founded on purported "direct evidence" of discriminatory intent.

Similarly, Mr. Healy should be barred from testifying that he observed some of the older drivers being switched from bulk trucks to side loader trucks, and that he observed Robert Jones "throwing cases."  (Healy Decl. ¶¶ 7-8.)  Mr. Healy does not purport to know the reasons for the supposed re-assignments and in fact admits

1 that not all of the more senior employees were given different assignments.  Further,
2 given that the Plaintiffs intend to testify about their own purported "re-assignments,"
3 there is no reason to call Mr. Healy as an additional witness at trial merely so he can
4 repeat the testimony, but without any foundation.

5 Finally, Mr. Healy wants to tell the jury that Robert Ward was a "good"
6 Operations Manager.  (Healy Decl. ¶ 3.)  As with Mr. Singh, that proposed
7 testimony is irrelevant for the reasons discussed above.  Mr. Healy should be barred
8 from testifying at trial.

### Conclusion

All six of Plaintiffs' proposed "me too" witnesses—Mike O'Leary, LaMont Perman, Michael Lemos, Amarjeet Singh, Felipe Estrada and Mark Healy—should be barred.  If the Court were to permit Plaintiffs' witnesses to offer irrelevant or duplicative testimony on various subjects, it would unfairly prejudice Defendants and require lengthy cross-examinations to clarify the issues (such as the reasons for Mr. Perman's separation from the company or why certain "expired" product might have been delivered on a particular day).  In that event, Defendants respectfully request that the time of such cross-examinations be "charged" against Plaintiffs' time allocation, given the time limitations that are imposed on the parties.

DATED:  October 25, 2011          CRONE HAWXHURST LLP


                                  By       /s/
                                     Gerald E. Hawxhurst
                                     Daryl M. Crone
                                     Joshua P. Gelbart
                                     Attorneys for Defendants
                                     The American Bottling Company, et al.