Gerald E. Hawxhurst (Bar No. 220327)
  jerry@cronehawxhurst.com
Daryl M. Crone (Bar No. 209610)
  daryl@cronehawxhurst.com
Joshua P. Gelbart (Bar No. 274021)
  jgelbart@cronehawxhurst.com
CRONE HAWXHURST LLP
10880 Wilshire Blvd., Suite 1150
Los Angeles, California 90024
Telephone:  (310) 893-5150
Facsimile:   (310) 893-5195

Attorneys for Defendants
The American Bottling Company and
Dr Pepper Snapple Group, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROBERT M. WARD, et al., | CASE NO. CV09-3279 DMG (CWx) |
|     Plaintiffs, | **DEFENDANTS' TRIAL BRIEF PURSUANT TO <u>LOCAL RULE</u> 16-10** |
|     vs. | |
| CADBURY SCHWEPPES BOTTLING GROUP, et al., | |
|     Defendants. | |

Pursuant to Local Rule 16-10, defendants The American Bottling Company and Dr Pepper Snapple Group, Inc. ("Defendants") respectfully submit this Trial Brief in response to Plaintiffs' Memorandum of Contentions of Fact and Law, and to provide advance notice of the following additional evidentiary and other issues that the Court should consider at or before trial:

## I. THE COURT SHOULD RECONSIDER ITS ORDER PERMITTING WARD TO OFFER SEVERAL YEARS OF PURPORTED AGE DISCRIMINATION EVIDENCE OUTSIDE THE LIMITATIONS PERIOD

It is undisputed that all evidence of age discrimination before March 2007 is outside the applicable, one-year statute of limitations. In its November 2, 2011 order denying Defendants' motion *in limine* no. 6, the Court appears to have also rejected Plaintiffs' contention that the "continuing violation doctrine" applies to Ward's disparate treatment claim. Indeed, as the Court's order reflects, Plaintiffs' counsel conceded on the record at the pretrial conference that Ward isn't "seeking damages for a discrete act that occurred in the pre-2007 timeframe…" (Docket No. 160 at 11.) Nonetheless, the Court ruled that Ward may introduce pre-March 2007 evidence as "background… to show Defendants' discriminatory animus… upon Ward within the limitations period…." (Id. at 12.) In support of that proposition, the Court cited Lyons v. England, 307 F.3d 1092 (9th Cir. 2002), even though the plaintiff in that case was attempting to prove a "pattern or practice" claim, which Plaintiffs' counsel conceded at the pretrial conference is not being litigated here. (Docket No. 160 at 9.) Moreover, the "pattern or practice" at issue in Lyons was the same both before and during the limitations period. See Lyons, 307 F.3d at 1110-12.

Defendants respectfully submit that the Court has overlooked the fact that Ward has *never* come forward with evidence of age discrimination by anyone (let alone Taylor Marcus or Richard Laitinen) within the limitations period, *i.e.*, in the

single month that he worked for the Defendants in the summer of 2007, in between his self-imposed "stress leaves." Likewise, Ward has *never* come forward with evidence of an adverse employment action that he suffered as a result of *age discrimination* in the summer of 2007. Instead, the constructive termination Ward alleges is that Richard Laitinen "required" him to participate in a scheme of age discrimination against other employees, and "required" him to engage in unsafe beverage practices, in support of his Tameny claim. Therefore, even if true, prior evidence of ageist conduct by Mr. Marcus prior to March 2007 would be entirely irrelevant because Ward has *no* age discrimination claim within the limitations period. Allowing Ward to testify about multiple years' worth of purported discriminatory acts against him—all predating Mr. Laitinen's arrival at the company—that are unquestionably barred by the statute of limitations, and have no bearing on his claims that are within the limitations period, will cause severe and prejudicial evidentiary error on *all* claims to be presented by Plaintiffs at trial. Furthermore, allowing Ward to present evidence of the alleged discriminatory acts (which concern things such as his performance reviews and complaints that he did not get enough staff), will unnecessarily prolong trial. See Rule 403. Defendants respectfully request that the Court reconsider its ruling on this issue or, at a minimum, permit Defendants to *voir dire* Mr. Ward prior to empanelling the jury or allowing him to testify about the alleged pre-limitations events.

## II.     THE COURT SHOULD BAR LEONARD TALTON FROM TESTIFYING THAT HE BELIEVES HIS STROKE WAS CAUSED BY WORK

Plaintiff Leonard Talton claims that discrimination "caused" a "stroke" he suffered several years ago, while not at work. However, *no* doctor will offer any opinion at trial concerning causation of that claimed injury, let alone that the stroke was supposedly caused by work. For this reason, Defendants respectfully request

that Mr. Talton himself be barred from attempting to testify that his stroke was caused by work.

As the Court may recall, Defendants' motion *in limine* no. 4 sought to exclude various treating physicians from testifying at trial on the basis of Plaintiffs' expert disclosure violations, and the failure of several of those physicians to appear for a deposition. As a result of the Court's order granting that motion, no doctor will testify at trial concerning *any* treatment or diagnosis of Leonard Talton. (See Docket No. 160 at 8.) Accordingly, among other things, no expert will offer an opinion when Mr. Talton may have actually suffered a stroke, or whether it was caused by work.

To be sure, Mr. Talton cannot attempt to circumvent the Court's order by reciting opinions purportedly reached by his physicians, especially as the testimony would be hearsay.[1] Mr. Talton also lacks foundation under Rule 702 to interpret his doctors' medical records. See Jerden v. Amstutz, 430 F.3d 1231, 1239-40 (9th Cir. 2005) (holding that, pursuant to Rule 702, it was "error" for the trial court to permit a percipient witness to review medical records and provide purported "lay opinions" interpreting them).

In addition, as a matter of law, Mr. Talton lacks foundation to provide his own lay opinion of what he thinks purportedly "caused" his stroke. See, e.g., Burleson v. Samson, 2007 WL 2688840, at *2 (E.D. Cal. Sept. 13, 2007) ("Plaintiff may not, however, interpret or otherwise explain in medical or diagnostic terms the nature or extent of his injuries or the medical records.") (citing Jerden, 430 F.3d at 1239-40); Rangasan v. Hawaiian Tug & Barge Corp., 2000 WL 1569285, at *3 (D.

---

[1] Although Federal Rule of Evidence 803(4) provides an exception to the hearsay rule for *statements made by a patient* for purposes of medical treatment or diagnosis, there is no exception to Rule 801 (let alone Rule 702) for the *opinions* subsequently rendered *by the treating physician*.

Hawai'i Apr. 6, 2000) ("medical testimony is necessary to establish a causal link between the Accident and Rangasan's back injury because the causal link is not readily apparent to a lay person").  That is because a lay witness without medical training cannot testify concerning what he thinks "caused" a neurologic condition. In any event, Plaintiffs never disclosed that Mr. Talton would present such an opinion at trial, pursuant to Fed. R. Civ. P. 26(a)(2).  So in addition, it is barred pursuant to Fed. R. Civ. P. 37(c)(1).

### III. THE COURT SHOULD BAR ROBERT JONES FROM TESTIFYING ABOUT HIS CLAIMED PHYSICAL INJURIES

On November 2, 2011, the Court granted Defendants' motion *in limine* no. 3, thereby striking Jones's deposition errata that attempted to contradict his testimony conceding he had suffered no physical injuries as a result of discrimination.  (See Docket No. 160 at 5.)  The Court also ordered that any evidence of his belated physical injury claims would be barred unless Jones was immediately presented for deposition.  Plaintiffs' counsel then waited until November 8—four court days before trial—to vaguely represent that he was "available."  That half-hearted attempt at producing him for deposition less than a week before trial is highly prejudicial to the defense.  Mr. Jones should be barred from testifying about his claimed physical injuries at trial.

Moreover, as noted above with respect to Mr. Talton, a plaintiff cannot testify about causation of injuries without medical evidence.  It is undisputed that Jones has no doctor who will testify about any injuries he purportedly suffered.  For this additional reason, Jones should be barred from testifying about his previously-abandoned physical injury claim(s).

### IV. THE COURT SHOULD BAR ALL TESTIMONY CONCERNING DEFENDANTS' ALLEGEDLY "UNSAFE BREAKAGE" POLICIES

As the Court acknowledged when granting Defendants' motion *in limine* no. 10, Ward's Third Claim for Relief requires the existence of a public policy that

Defendants supposedly violated, which must be rooted in the text of a statutory or constitutional provision.  See Esberg v. Union Oil Co., 28 Cal. 4th 262, 271-72, 121 Cal. Rptr. 2d 203, 210 (2002); Turner v. Anheuser–Busch, Inc.,7 Cal. 4th 1238, 1257, 32 Cal. Rptr. 2d 223, 234 (1994).  (See Docket No. 160 at 13-14.)

However, Ward contends he believed he was being asked to violate a "health and safety" law when Richard Laitinen allegedly instructed him to sell out-of-code-date product to customers (at a discounted price) in June 2007.  That allegation is rooted in *no* statutory or constitutional provision that Plaintiffs have ever cited to the Court.  As the Court observed at the pretrial conference, there is no allegation that any product was adulterated or contaminated.

Plaintiffs therefore stated that they intended to argue that the sale of "expired" product violates industry "best practice," which the Court found irrelevant when it precluded Plaintiffs' "industry expert" from testifying.  Therefore, all testimony concerning the sale of out-of-code-date product should be barred as irrelevant and confusing to the jury.

Ward also contends he believed he was being asked to violate a "health and safety" law when Mr. Laitinen instructed him to wash off beverage cans that had been spilled on—because they had dried soda on the *outside* of the can—so that they could be repackaged and distributed to customers.  Here again, Plaintiffs cite no public policy that Defendants supposedly violated.  To be sure, at the pretrial conference, the Court even noted that: "if we're talking about the fact that the packages were broken that there were stickiness or stains on the bottles, I don't think that gets us there."  For this reason, Plaintiffs also should be barred from presenting evidence or argument concerning Defendants' "breakage" practices.  See also CACI 2402 cmt. ("The judge should determine whether the purported reason for plaintiff's resignation would amount to a violation of public policy.").

Furthermore, even if the Court were to allow evidence on either of these subjects, the only person who should be permitted to testify about them is Robert

Ward himself.  All other testimony would be irrelevant given that, even under Plaintiffs' paradigm, it only matters whether Robert Ward himself reasonably thought *he* was being asked to violate a public policy.  The Court shouldn't permit ten additional witnesses to parrot the identical purportedly "unsafe" practices as Ward intends to do.

## V. THE COURT SHOULD BAR EVIDENCE OF PLAINTIFFS' "WRITE-UPS" BECAUSE THEY LED TO NO ADVERSE EMPLOYMENT ACTION AGAINST THEM

The California Court of Appeal has squarely held that "oral or written criticism of an employee or transfer into a comparable position does not meet the definition of an adverse employment action under FEHA."  See Akers v. County of San Diego, 95 Cal. App. 4th 1441, 1457 (2002).  Thus, a work-related "write up" or other criticism is only actionable if "the employer wrongfully uses the negative evaluation to substantially and materially change the terms and conditions of employment."  Id.; see also Pinero v. Specialty Restaurants Corp., 130 Cal. App. 4th 635, 642, 30 Cal. Rptr. 3d 348 (2005) (a FEHA plaintiff cannot "litigate his displeasure or trivial grievances with an employer's work-related criticisms").

Nonetheless, Plaintiffs intend to testify about the "write-ups" they received from various supervisors over the years.  All of those written criticisms of Plaintiffs' job performance are irrelevant as a matter of law, and should be barred as prejudicial pursuant to Rule 403.  Here, *no* write-up or review was subsequently used or relied upon to terminate a Plaintiff, reduce his pay or otherwise "substantially and materially change the terms and conditions of [his] employment."  Accordingly, it is irrelevant to their FEHA claims how many "write ups" each Plaintiff was given, whether they were supposedly "frivolous," or whether they were supposedly motivated by age bias.  See Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1043, 32 Cal. Rptr. 3d 436 (2005); see also id. at 1054-55 ("Minor or relatively trivial adverse actions or conduct by employers or fellow employees that,

from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable."). Allowing Plaintiffs to introduce such write-ups will unnecessarily prolong trial because Defendants will necessarily have to examine Plaintiffs about the write-ups and provide other evidence about why such write-ups were made.

## VI.  THE COURT SHOULD BAR PLAINTIFFS FROM INTRODUCING ANY TESTIMONY FROM DR. PHILLIP KANTER

When the Court granted Defendants' motion *in limine* no. 4, it noted that a treating physician is subject to the expert report requirement set forth in Fed. R. Civ. P. 26(a)(2) unless he or she intends to offer opinions reached "during the course of treatment."  (See Dkt. No. 160 at 6 (citing Goodman v. Staples the Office Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011)).)

Yet one of the doctors Plaintiffs intend to call as a witness—Dr. Phillip Kanter—is barred from offering *any* opinion at trial because he never "treated" any Plaintiff.  Instead, Dr. Kanter admits that he merely "evaluated" Plaintiff Alfonso January in his capacity as the "Agreed Medical Examiner" in Mr. January's workers' compensation case:

> Q. AND AM I CORRECT THAT ALFONZO JANUARY, THAT -- LET ME BACK UP -- THAT YOU HAVE TREATED ALFONZO JANUARY?
>
> A. *I DIDN'T TREAT HIM. I EVALUATED HIM, SIR.  I WASN'T THE TREATING DOCTOR.*  I WAS THE AGREED MEDICAL EVALUATOR.

(See Ex. A at 6:16-21 (emphasis added); see also id. at 6:22-8:9.)

As a matter of law, an "Agreed Medical Examiner" hired by counsel to render opinions for purposes of a workers' compensation case is not a "treating physician" exempt from the expert report requirements set forth in Fed. R. Civ. P. 26(a)(2)(B).

- 7 -

DEFENDANTS' TRIAL BRIEF

See Cunanan v. Astrue, 2008 WL 4184639, at *3 (C.D. Cal. Sept. 3, 2008) ("The AME's opinion is not entitled to the weight given a treating physician because the AME, much like a consultative examiner, was not hired to treat Plaintiff, but rather to objectively evaluate Plaintiff's condition for a workers compensation claim."); see also Graham v. Bahai Sternwhelers, Inc., 2003 WL 25678516, at *5 (S.D. Cal. Jan. 23, 2003) ("where 'an attorney selects the physician for treatment as well as testimony it is presumed that the physician was selected for expert testimony' and therefore an expert written report is required") (quoting Hall v. Sykes, 164 F.R.D. 46, 49 (E.D. Va. 1995)); Perkins v. United States, 626 F. Supp. 2d 587, 590-91 (E.D. Va. 2009) (same).

In short, Dr. Kanter cannot testify concerning *any* opinions reached during the "course of treatment" because he did not provide any "treatment" to any Plaintiff. Accordingly, Dr. Kanter should be barred as a witness at trial. See Goodman, 644 F.3d at 826; Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106-07 (9th Cir. 2001) (describing sanctions for violations of the Rule 26 disclosure requirements).

### VII. THE COURT SHOULD BAR PLAINTIFFS' HEARSAY TESTIMONY CONCERNING ALLEGED "PARTY ADMISSIONS" BY ANYONE OTHER THAN RICHARD LAITINEN

Plaintiffs intend to testify about alleged "party admissions" by various company employees that purport to evidence Mr. Laitinen's alleged discriminatory intent. But the only statements that can be offered for the truth of the matter asserted are those that the witness purportedly heard directly from Richard Laitinen himself, because he is the only person who Plaintiffs allege made the decision to assign older employees "harder" tasks in order to injure them or force them to quit. See Fed. R. Evid. 801(d)(2)(D).

Plaintiffs have produced no evidence to connect anyone else to the purported "decision" to hurt them or induce them to quit. Thus, they have failed to establish a

nexus between alleged statements by other employees and the supposed adverse employment action that they allege here.  See <u>Selby v. Pepsico, Inc.</u>, 784 F. Supp. 750, 757 (N.D. Cal. 1991) (statement by Senior Vice President for Human Resources was hearsay because he did not participate in the decision to terminate plaintiff) (citing <u>DeHorney v. Bank of America Nat. Trust and Sav.</u>, 879 F.2d 459, 468 (9th Cir. 1989)); <u>see</u> also <u>Johnson v. Weld County</u>, 594 F.3d 1202, 1209 (10th Cir. 2010) ("an employee's statements are not attributable to his employer as a party-opponent admission in an employment dispute unless the employee was 'involved in the decision making process affecting the employment action' at issue") (collecting cases and barring double hearsay).  Defendants respectfully submit that the Court should reconsider its order denying Defendants' motion *in limine* no. 7, which held that an employee's statement is non-hearsay if they merely helped "implement" Mr. Laitinen's alleged instructions.  (<u>See</u> Docket No. 160 at 12.)

## VIII. **THE COURT SHOULD PERMIT DEFENDANTS THE OPPORTUNITY TO CONDUCT VOIR DIRE AND MAKE OFFERS OF PROOF CONCERNING THE COMPROMISES AND RELEASES, THE STATUTE OF LIMITATIONS AND FOUNDATIONAL TESTIMONY BY CERTAIN PLAINTIFFS**

As the Court is aware, Defendants contend that certain of the Plaintiffs' claims for alleged injuries are barred by the compromises and releases they negotiated, signed and accepted payment for in the Workers' Compensation system. Defendants respectfully request the opportunity to cross-examine Plaintiffs about those settlements at trial (outside the presence of the jury if the Court requires).  Mr. Ward intends to testify (and perhaps have others testify) about supposedly discriminatory treatment that admittedly falls outside the limitations period. Defendants request the opportunity to examine Mr. Ward about those allegations outside the presence of the jury because Defendants will ask the Court to bar such

- 9 -
DEFENDANTS' TRIAL BRIEF

testimony after hearing Mr. Ward's testimony (to the extent the Court does not bar it outright, as requested above).  Finally, it appears that Plaintiffs intend to offer generalized testimony about events for which they plainly would have no evidentiary basis, such as the work assigned to persons on other shifts or flat-out rumors.  The Court should instruct Plaintiffs' counsel that they cannot sponsor testimony that does not have an evidentiary foundation.

### IX. <u>UNOPPOSED REQUEST THAT COURT BE ADJOURNED NOVEMBER 30, 2011</u>

Counsel for Defendants was recently informed of an evidentiary hearing scheduled for November 30, 2011 before The Honorable Francisco Firmat in Department C-15 of Orange County Superior Court (Complex Division).  Defense Counsel has requested that the hearing date in that matter be moved to a date that does not conflict with trial in this case; however, the defendants in that case refused to do so (despite Judge Firmat's strong suggestion) and the Superior Court lacks power to order a different date (the hearing deadline is jurisdictional).  Therefore, counsel for the Defendants respectfully request that trial in this case be adjourned the day of November 30, 2011, which Plaintiffs' counsel do not oppose.

DATED:  November 8, 2011     CRONE HAWXHURST LLP

By    /s/
  Gerald E. Hawxhurst
  Daryl M. Crone
  Attorneys for Defendants
  The American Bottling Company, et al.