Gerald E. Hawxhurst (Bar No. 220327)
 jerry@cronehawxhurst.com
Daryl M. Crone (Bar No. 209610)
 daryl@cronehawxhurst.com
Joshua P. Gelbart (Bar No. 274021)
 jgelbart@cronehawxhurst.com
CRONE HAWXHURST LLP
10880 Wilshire Blvd., Suite 1150
Los Angeles, California 90024
Telephone:  (310) 893-5150
Facsimile:   (310) 893-5195

Attorneys for Defendants
The American Bottling Company and
Dr Pepper Snapple Group, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ROBERT M. WARD, et al., <br><br>     Plaintiffs, <br><br>     vs. <br><br> CADBURY SCHWEPPES BOTTLING GROUP, et al., <br><br>     Defendants. | CASE NO. CV09-3279 DMG (CWx) <br><br> **DEFENDANTS' MOTION FOR ENTRY OF JUDGMENT AS A MATTER OF LAW** |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES......................................... - 1 -

Preliminary Statement ........................................................................... - 1 -

Argument    ........................................................................................... - 1 -

I.    PLAINTIFFS' FIRST AND SECOND CLAIMS FOR RELIEF ................ - 1 -

      A.    Ward Possesses No Discrimination Claim Within the Statute of Limitations .......................................................................... - 1 -

      B.    The Non-Management Plaintiffs Have Come Forward With No Proof of an Adverse Employment Action............................. - 2 -

II.   WARD'S THIRD CLAIM FOR RELIEF FAILS ................................. - 5 -

III.  JONES'S FOURTH CLAIM FOR RELIEF FAILS ................................. - 9 -

IV.   TALTON'S AND VALADEZ' FIFTH AND SIXTH CLAIMS FOR RELIEF FAIL.................................................................... - 11 -

V.    THE COURT SHOULD DISMISS ALL OF PLAINTIFFS' PERSONAL INJURY CLAIMS AND ORDER A NEW TRIAL............. - 14 -

      A.    The Non-Management Plaintiffs Have Presented No Proof of Medical Causation for their Claimed Injuries................................. - 14 -

      B.    The Non-Management Plaintiffs Concede That Their Injuries Were Caused By Work .................................................... - 16 -

VI.   THE COURT SHOULD DISMISS THE NON-MANAGEMENT PLAINTIFFS' ECONOMIC DAMAGES CLAIM BECAUSE IT IS SPECULATIVE AS A MATTER OF LAW ............................................. - 19 -

VII.  THE COURT SHOULD DISMISS THE NON-MANAGEMENT PLAINTIFFS' FRONT PAY DAMAGES CLAIM BECAUSE IT IS INVALID AS A MATTER OF LAW......................................................... - 20 -

# <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

<u>Cases</u>

Ackerman v. Western Elec. Co.,
    643 F. Supp. 836 (N.D. Cal. 1986) ................................................. 20

Akers v. County of San Diego,
    95 Cal. App. 4th 1441, 116 Cal. Rptr. 2d 602 (2002) ........................... 2, 5, 10

Burleson v. Samson,
    2007 WL 2688840 (E.D. Cal. Sept. 13, 2007) ................................. 14

Charles J. Vacanti, M.D., Inc. v. State Compensation Insurance Fund,
    24 Cal. 4th 800, 102 Cal. Rptr. 2d 562 (2001) ................................. 18

DeSoto v. Yellow Freight Sys., Inc.,
    957 F.2d 655 (9th Cir. 1992) ...................................................... 6

Esberg v. Union Oil Co.,
    28 Cal. 4th 262, 121 Cal. Rptr. 2d 203 (2002) ............................... 6, 8

Hastings v. Dep't of Corrections,
    110 Cal. App. 4th 963, 2 Cal. Rptr. 3d 329 (2003) ........................... 12

Huffman v. Interstate Brands Cos.,
    121 Cal. App. 4th 679, 17 Cal. Rptr. 3d 397 (2004) ....................... 16, 18

Jerden v. Amstutz,
    430 F.3d 1231 (9th Cir. 2005) .................................................... 14

Khachikian v. DeVry Institute of Tech.,
    2002 WL 84149 (C.D. Cal. Jan. 14, 2002) ...................................... 9

Malais v. Los Angeles City Fire Dept.,
    150 Cal. App. 4th 350, 58 Cal. Rptr. 3d 444 (2007) ......................... 3, 4

McRae v. Dept. of Corrections and Rehabilitation,
    142 Cal. App. 4th 377, 48 Cal. Rptr. 3d 313 (2006) ......................... 10

Montero v. AGCO Corp.,
    192 F.3d 856 (9th Cir. 1999) ...................................................... 9

Nadaf-Rahrov v. The Neiman Marcus Group, Inc.,
    166 Cal. App. 4th 952, 83 Cal. Rptr. 3d 190 (2008) ....................... 12, 13

Pichon v. Pacific Gas & Electric Co.,
    212 Cal. App. 3d 488, 260 Cal. Rptr. 677 (1989) ........................... 18

Pinero v. Specialty Restaurants Corp.,
    130 Cal. App. 4th 635, 30 Cal. Rptr. 3d 348 (2005) ....................... 10

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Rangasan v. Hawaiian Tug & Barge Corp.,
    2000 WL 1569285 (D. Hawai'i Apr. 6, 2000) ................................. 14

Richards v. CH2M Hill, Inc.,
    26 Cal. 4th 798, 111 Cal. Rptr. 2d 87 (2001) ..................................... 1

Sequoia Ins. Co. v. Super. Ct.,
    13 Cal. App. 4th 1472, 16 Cal. Rptr. 2d 888 (1993) ......................... 7

Stevenson v. Super. Ct.,
    16 Cal. 4th 880, 66 Cal. Rptr. 2d 888 (1997) ..................................... 6

Thomas v. Dep't of Corrections,
    77 Cal. App. 4th 507, 91 Cal. Rptr. 2d 770 (2000) .......................... 5

Tiner v. Greenberg Traurig, P.A.,
    2001 WL 1262616 (C.D. Cal. Sept. 10, 2001) ................................... 9

Torres v. City of Los Angeles,
    548 F.3d 1197 (9th Cir. 2008) ............................................................ 1

Trujillo v. North County Transit Dist.,
    63 Cal. App. 4th 280, 73 Cal. Rptr. 2d 596 (1998) .......................... 5

Turner v. Anheuser–Busch, Inc.,
    7 Cal. 4th 1238, 32 Cal. Rptr. 2d 223 (1994) ................................... 6

Watkins v. Ameripride Servs.,
    375 F.3d 821 (9th Cir. 2004) ............................................................ 12

Yanowitz v. L'Oreal USA, Inc.,
    36 Cal. 4th 1028, 32 Cal. Rptr. 3d 436 (2005) ............................... 10

### Statutes

Cal. Gov't Code § 12960 .............................................................................. 1

Cal. Health & Safety Code § 110545 .......................................................... 7

Cal. Health & Safety Code § 110585(c) ....................................................... 8

Fed. R. Civ. P. 50(a) ..................................................................................... 1

### Other Authorities

CACI 2402 cmt. ............................................................................................ 6

CACI 2431 ..................................................................................................... 6

CACI 2505 ................................................................................................... 10

CACI 2541 ................................................................................................... 12

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

CACI 2546 ............................................................................................................ 11

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Defendants move for entry of judgment as a matter of law on a variety of issues on which Plaintiffs have been given the opportunity to be heard.  Fed. R. Civ. P. 50(a) provides that:  "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:  (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  Thus, the Court should grant judgment in favor of Defendants as a matter of law on an issue if no reasonable juror could find in the Plaintiffs' favor on that issue.  See Torres v. City of Los Angeles, 548 F.3d 1197, 1205-06 (9th Cir. 2008).

### Argument

**I.    PLAINTIFFS' FIRST AND SECOND CLAIMS FOR RELIEF**

### A.    Ward Possesses No Discrimination Claim Within the Statute of Limitations

Ward's First Claim for Relief is for age discrimination in violation of FEHA, and his Second Claim for Relief alleges failure to take steps to prevent discrimination.  As the Court already knows, Ward filed his "Complaint of Discrimination" with the California Department of Fair Employment and Housing on March 24, 2008.  See Trial Ex. 122-5.  Accordingly, Ward's claims cannot be based on purported discriminatory conduct occurring before March 24, 2007.  See Cal. Gov't Code § 12960 (reciting one year statute of limitations).

The Court already has rejected Ward's claim that the "continuing violation doctrine" applies here.  See also Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 823, 111 Cal. Rptr. 2d 87 (2001).  Nonetheless, the Court permitted Ward to testify about purported discriminatory conduct perpetrated against him outside the limitations

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

period in response to Plaintiffs' theory that it constituted "background" evidence in support of a claim within the limitations period.  (As the Court knows, Defendants contend that such "background" evidence was prejudicial to begin with given that, among other things, Ward does not allege a "pattern or practice" claim.)  Yet Ward has *no* age discrimination claim within the limitations period.  For example, as explained at further length below, Ward's written evaluation from Michael O'Leary dated March 26, 2007 is irrelevant because Ward failed to present evidence that it (or any other oral or written criticism within the limitations period) was subsequently used to effectuate an adverse employment action against him.

Ward's failure to come forward with proof of an adverse employment action in support of his First and Second Claims is further reflected in his testimonial admission that he resigned in November 2007 solely because of purported "illegal" activities occurring in the workplace (*i.e.*, alleged age discrimination against delivery drivers and alleged unsafe beverage distribution practices), rather than because discrimination *against him* had become intolerable.  The contemporaneous letters he claims he authored in July 2007 and November 2007 are, at best, only consistent with those other theories of relief.  See Trial Exs. 44 & 48.  Accordingly, pursuant to the authority cited below, Ward has failed to demonstrate a nexus between the alleged "intolerable conditions" caused by alleged age discrimination and his decision to quit in November 2007.

For these reasons, the Court should enter judgment against Ward's First and Second Claims for relief.

**B.      The Non-Management Plaintiffs Have Come Forward With No Proof of an Adverse Employment Action**

Trial has demonstrated that the Non-Management Plaintiffs' discrimination claims are really a claim that they should be given preferential treatment, which is not actionable under FEHA.  See, e.g., Akers v. County of San Diego, 95 Cal. App. 4th 1441, 1445, 116 Cal. Rptr. 2d 602 (2002); )Malais v. Los Angeles City Fire

1  Dept., 150 Cal. App. 4th 350, 358, 58 Cal. Rptr. 3d 444 (2007 ("None of the cases
2  cited above … found adverse employment actions in transfers that involved working
3  in assignments the employee preferred less than other assignments but with equal
4  pay, benefits, promotional opportunities, and no hostile environment.  None of the
5  cases supports the proposition that assignment to a less-preferred position alone
6  constitutes an adverse employment action.").

7        The Non-Management Plaintiffs candidly admit that they seek reinstatement
8  of the seniority-based preference system they claim existed prior to Richard
9  Laitinen's arrival as Branch Manager of the San Fernando facility.  For example, the
10  forklift operators concede that they occupied their preferred position solely on
11  account of their seniority within their local union and the deference of prior
12  management.  Mr. Jones also explained that forklift operators were occasionally
13  asked to build orders even before 2007, and that under the terms and conditions of
14  their union contract, the "duties" they could be asked to perform included building
15  orders.  Indeed, he and the other forklift operators further conceded that the union
16  contract permitted the company to assign them *any* task within the facility so long as
17  they were paid their forklift operator's hourly wage (which they were).  The fact that
18  forklift work was preferable—or even "less physical"—is simply irrelevant, and
19  does not change the undisputed fact that the "terms and conditions" of Plaintiffs'
20  employment were never substantially altered.

21        The analysis is no different for the delivery drivers.  The undisputed evidence
22  is that delivery drivers were able to obtain preferential treatment concerning their
23  choice of truck and delivery route before 2007, based on their seniority in the union
24  and the deference of prior management.  Here again, the Non-Management
25  Plaintiffs have failed to demonstrate any material adverse change in the terms and
26  conditions of their employment.  First, Messrs. Suhay and January contend that the
27  senior drivers were put on bulk trucks.  That cannot constitute a material adverse
28  change in the terms and conditions of employment for the obvious reasons that

many of the senior drivers were already driving bulk trucks *before* Mr. Laitinen arrived in 2007, and that the union contract nowhere guaranteed any driver the right to drive their choice of truck or route.  Second, the Non-Management Plaintiffs contend that the senior drivers were given more "belt stops," "time stops," and merchandise stops than before Mr. Laitinen became Branch Manager.  But the undisputed evidence (from at least Amarjeet Singh and Michael O'Leary) is that all drivers—young and old—had to contend with belt stops, time stops and merchandise stops well before Mr. Laitinen's arrival, and that younger drivers also worked those stops even after the "changes" of which Plaintiffs complain.  The branch dispatcher, Juan Venegas—who, in contrast to the Plaintiffs, possesses proper foundation to speak on the issue of driver routes—further testified that the senior drivers were not targeted with harder routes, and that all of the post-Laitinen "changes" to route assignments were applied across the board and affected all drivers equally.  Third, Plaintiffs contend that they had to deliver "bulk stops" on a side loader.  But, here again, the evidence from Plaintiffs' own witnesses (*e.g.*, Michael O'Leary) is that the practice of having to service "bulk stops" on a side loader (or make "large" deliveries on a side loader) long predated Mr. Laitinen, and that *all* drivers were given such assignments before and after he arrived.  Here again, Plaintiffs cannot proceed to verdict simply because there were other driving assignments they preferred more than the ones they were given.  See Malais, 150 Cal. App. 4th at 358.

Thus, the undisputed evidence is that the Non-Management Plaintiffs' discrimination claims are really a disguised preference grievance (which their own union rejected).  Their theory of discrimination is that their preferential treatment ended, and that they were instead required to do the same work as other (less tenured) employees.  Yet the Non-Management Plaintiffs concede that the company could ask them to perform the same work that every other employee was asked to do (young or old, easy or hard), provided they were paid their current wage—and each

Non-Management Plaintiff concedes he suffered no reduction in his rate of pay. The Non-Management Plaintiffs were merely assigned duties within the terms and conditions of their employment, and any changes affected *all* employees.  That isn't an adverse employment action as a matter of law.  See also Thomas v. Dep't of Corrections, 77 Cal. App. 4th 507, 512, 91 Cal. Rptr. 2d 770 (2000) (general assertions that a plaintiff "was assigned more duties than other employees" is insufficient as a matter of law to demonstrate an "adverse employment action").

Moreover, although several Plaintiffs claim they were subjected to unjustified "write ups," it is irrelevant to a FEHA claim how many "write ups" a plaintiff was given, or whether they were supposedly "frivolous."  See Akers, 95 Cal. App. 4th at 1457 ("oral or written criticism of an employee or transfer into a comparable position does not meet the definition of an adverse employment action under FEHA").  A "write up" would only be relevant if motivated by discriminatory intent *and* it was subsequently used as a basis to substantially alter the terms or conditions of employment.  See id.  The Non-Management Plaintiffs have presented no such evidence in their case-in-chief, nor could they have done so.  There was no adverse action that resulted from any "write up."

Accordingly, the Court should enter judgment against the Non-Management Plaintiffs' First and Second Claims as a matter of law.  See also Trujillo v. North County Transit Dist., 63 Cal. App. 4th 280, 289, 73 Cal. Rptr. 2d 596 (1998) (claim for failure to prevent discrimination cannot succeed where the plaintiff fails to demonstrate actionable discrimination).

## II.   WARD'S THIRD CLAIM FOR RELIEF FAILS

Ward's Third Claim for Relief, for wrongful constructive discharge, also fails as a matter of law.

First, with respect to the portion of his claim directed to "breakage" procedures, Ward has failed to prove the necessary element that he was required to violate a fundamental public policy enshrined in the plain language of a statutory or

constitutional provision.  See CACI 2431.  For example, no juror could reasonably conclude that dried soda on a beverage can constitutes a "biohazard" in violation of any statute.  Despite his overheated testimony, Ward cannot invent a public policy that doesn't exist.  See, e.g., DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (affirming entry of summary judgment against California wrongful termination "claim by an employee who refuses to work based on his erroneous belief that what he was asked to do was a violation of California law").  Stated differently, Ward's theory is that he need only prove he reasonably believed he was being asked to violate public policy.  Even if that were sufficient (which Defendants dispute), it only would permit Ward to escape a mistake of fact as opposed to a mistake of law.  As the Court noted when granting Defendants' motion *in limine* no. 10, a public policy must be enshrined in a statutory or constitutional provision to give rise to a Tameny claim.  See also Esberg v. Union Oil Co., 28 Cal. 4th 262, 271-72, 121 Cal. Rptr. 2d 203, 210 (2002) ("[i]n the context of a tort claim for wrongful discharge, tethering public policy to specific constitutional or statutory provisions serves not only to avoid judicial interference with the legislative domain, but also to ensure that employers have adequate notice of the conduct that will subject them to tort liability to the employees they discharge") (quoting Stevenson v. Super. Ct., 16 Cal. 4th 880, 889, 66 Cal. Rptr. 2d 888 (1997)); Turner v. Anheuser–Busch, Inc., 7 Cal. 4th 1238, 1257, 32 Cal. Rptr. 2d 223, 234 (1994) ("The tort of wrongful discharge is not a vehicle for enforcement of an employer's internal policies or the provisions of its agreements with others.  Turner's failure to identify a statutory or constitutional policy that would be thwarted by his alleged discharge dooms his cause of action.").

Nonetheless, the Court has not yet determined whether there is a fundamental public policy at issue in this case.  See, e.g., CACI 2402 cmt. ("The judge should determine whether the purported reason for plaintiff's resignation would amount to a violation of public policy.").  Adulterated food is defined by California law as, for

- 6 -

example, any food that "bears or contains any poisonous or deleterious substance that may render it injurious to health of man or any other animal that may consume it." Cal. Health & Safety Code § 110545.  Plaintiffs have *never* presented evidence of any such adulteration or contamination of the products that Defendants sold. Instead, over Defendants' objections, Plaintiffs have introduced unfounded and speculative evidence (all of it prejudicial and exceedingly cumulative) from numerous witnesses concerning supposed poor business practices that amount to no violation of any health or safety statute.  For example, Plaintiffs have presented their evidence of supposed insanitary conditions (*e.g.*, rats, "midges" and cockroaches) at the San Fernando facility in an obvious attempt to inflame the jury's passions. Plaintiffs also have presented evidence that the aluminum *exterior* of certain soda cans were supposedly "dirty" or "moldy" when delivered to retail customers, even though no law requires that the San Fernando facility maintain sanitary conditions. And, of course, the undisputed evidence is that those conditions (even if true) were open and obvious to customers.  In short, no reasonable juror could conclude that Ward "reasonably believed" he was being asked to sell "adulterated" product that, when consumed, would be harmful to consumers.

Plaintiffs' "out of date code" theory is also meritless.  As discussed in Defendants' pretrial papers and above, a Tameny claim must be based on a clear statutory or constitutional provision, and not a plaintiff's own interpretation of one. The "requirement that a policy be 'delineated' entails more specificity than merely being 'derived from' or 'based' on its source." Sequoia Ins. Co. v. Super. Ct., 13 Cal. App. 4th 1472, 1480, 16 Cal. Rptr. 2d 888 (1993).  Instead, the statute "must sufficiently describe the type of prohibited conduct to enable an employer to know the fundamental public policies that are expressed in that law." Id.  Thus, Plaintiffs' citation to Section 110585 of the California Health and Safety code is entirely irrelevant.  Plaintiffs have seized upon the portion of that statute that defines adulteration as a product where "damage or inferiority has been concealed in any

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

manner." <u>See</u> <u>Cal. Health & Safety Code</u> § 110585(c).  At best, the statute regards the manipulation of a product's *ingredients*, and not whether a product might be stale.  To be sure, there has not been any specific testimony that any product was actually "inferior," let alone out of date code.  It is legally irrelevant that various witnesses have testified that out-of-date-code product is supposedly "inferior" because it might not taste as good as "fresher" product.  As a matter of law, the plain language of Section 110585 nowhere proscribes the sale of short dated or out-of-date-code beverages.  <u>See</u> <u>Esberg</u>, 28 Cal. 4th at 271-72 (a <u>Tameny</u> claim must be based on the "plain language" of specific statutory or constitutional provisions).  Nor have Plaintiffs ever identified any other statute that requires the sale of Defendants' products by a certain readily identifiable "date code."  Indeed, the date codes are completely voluntary and are not required by any state or federal law.  Holding that Section 110585 applies to production dates on soft drink products would come as a surprise to the soft drink industry, from the manufacturers to every retailer in California.

Second, the remainder of Ward's <u>Tameny</u> claim fails for the same reasons as the Non-Management Plaintiffs' age discrimination claims.  The general public policy enshrined in FEHA does not permit Ward to claim that he was "required" to engage in conduct that, as a matter of law, does not constitute actionable age discrimination.  <u>See</u> <u>Esberg</u>, 28 Cal. 4th at 272 ("If, as we have concluded, the FEHA does not prohibit employers from denying educational benefits on the basis of age, then plaintiff may not ground a common law claim for denial of the same benefits in the FEHA's prohibition against age discrimination.").

Third, Ward has failed to come forward with evidence that he was "required" to violate any law.  For example, Ward conceded that Richard Laitinen never threatened him with retaliation for supposedly refusing to engage in the unsafe distribution of beverages, or the purported discrimination against older delivery drivers.

Fourth, Ward has failed to demonstrate a nexus between the alleged "intolerable conditions" and his decision to quit in November 2007.  The four-month delay in that self-inflicted adverse employment action belies his wrongful constructive discharge theory as a matter of law.  Mr. Ward testified that he was job hunting long before he ever returned to work in June 2007 and that he resigned so he could start a new job.  See Khachikian v. DeVry Institute of Tech., 2002 WL 84149, at *8 (C.D. Cal. Jan. 14, 2002) ("After his supervisors refused his demands for a larger raise, Plaintiff began an eight-month 'stress leave,' after which he resigned. His resignation came a year and a half after the faculty meeting at which [his supervisor] yelled at him and six months after [his supervisor's] death."); see also Montero v. AGCO Corp., 192 F.3d 856, 861 (9th Cir. 1999) (finding no constructive discharge giving rise to Title VII claim because, among other things: "By the time Plaintiff resigned she was not subject to intolerable working conditions.  In her deposition, plaintiff testified that [her superior's] sexually harassing behavior had ceased three to four months before she left [defendant]."); Tiner v. Greenberg Traurig, P.A., 2001 WL 1262616, at *6 (C.D. Cal. Sept. 10, 2001) ("[Plaintiff] can show no constructive discharge causally related to the claimed billing fraud.  The fact that the alleged billing fraud, if it occurred, may have been unlawful—even criminally—is not a sufficient basis for quitting.").

For all these reasons, judgment should also be entered against the third claim as a matter of law.

## III.   JONES'S FOURTH CLAIM FOR RELIEF FAILS

Trial also has demonstrated that Jones's Fourth Claim for Relief, for retaliation, fails as a matter of law.  Among other things, Jones has offered no evidence that he was ever retaliated against.  The undisputed evidence is that he *already* was being tasked with having to build loads (supposedly "full time") when he complained to a member of Human Resources and to his supervisors that he should not have had to do that work on the basis of his union seniority.  Because it is

undisputed that Mr. Laitinen already had implemented his change in work assignments at the San Fernando facility, there is no nexus between Jones' subsequent report to Human Resources (or to his union) and any supposed "adverse employment action."  Accordingly, even if he could demonstrate an adverse employment action in support of his claims generally (which he cannot), Jones has failed to prove any alleged retaliation that was a substantial factor in causing his claimed harm.[1]  See CACI 2505.

Jones also testified about some write-ups he received from John Wunderlin and others.  However, by his retaliation claim, Jones cannot "litigate his displeasure or trivial grievances with an employer's work-related criticisms."  Pinero v. Specialty Restaurants Corp., 130 Cal. App. 4th 635, 642, 30 Cal. Rptr. 3d 348 (2005).  As discussed above, "mere oral or written criticism of an employee ... does not meet the definition of an adverse employment action under the FEHA."  Akers, 95 Cal. App. 4th at 1457.  Jones failed to present any evidence that Defendants used a "write up" (purportedly motivated by discriminatory intent or as "retaliation") to subsequently materially alter the terms or conditions of his employment, let alone evidence showing that Defendants did so in a manner that is actionable under FEHA.  See Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1043, 32 Cal. Rptr. 3d 436 (2005); see also id. at 1054-55 ("Minor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable.").  To the contrary, the undisputed evidence from several of

---

[1] Jones's subjective bad feelings are irrelevant as a matter of law.  See McRae v. Dept. of Corrections and Rehabilitation, 142 Cal. App. 4th 377, 392, 48 Cal. Rptr. 3d 313 (2006) ("A transfer is not an adverse action simply because the plaintiff finds it to be 'personally humiliating.'"); see also id. at 386 ("A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient.").

Plaintiffs' witnesses is that the terms of their union contract precluded termination (or any other adverse employment action) based on a mere "write up."  Moreover, Jones testified that the majority of the "write ups" he received—for negligent operation of a forklift—were similar in kind (and less severe) than a stern one that he received from Ward in 2004.  <u>See</u> Trial Ex. 580.

Accordingly, no reasonable juror could find in favor of Jones on his retaliation claim, as a matter of law.  Judgment should be entered against that claim too.

## IV.   <u>TALTON'S AND VALADEZ' FIFTH AND SIXTH CLAIMS FOR RELIEF FAIL</u>

Talton and Valadez claim that Defendants failed to engage in a good faith interactive process or failed to attempt to make reasonable accommodations for their alleged disabilities.  But there is no evidence that Defendants failed to engage in a good faith interactive process to arrive at reasonable accommodations for Talton or Valadez.  <u>See</u> CACI 2546.  Rather, the evidence is to the contrary.  Numerous witnesses (including third-party witnesses such as Amarjeet Singh) have testified that the company had procedures in place for an interactive process and that it attempts to reasonably accommodate workers with restrictions.

As to Talton, the company did exactly what it was supposed to do.  Following his return from a medical leave in August 2007, Talton initially presented his immediate superior (Pete Theilmann) with work restrictions precluding him from working in *any* available position.  Talton concedes that he was unable to perform the essential functions of his job as a warehouseman, or even operate a forklift all day (as he evidently desired) under the medical restrictions initially imposed by his treating physician.  Specifically, Talton conceded that his forklift duties would have required him to open and close the heavy doors of a side loader truck, which he could not have completed absent violation of company safety policy.

1    Far from refusing to discuss the matter, Talton's superior reviewed the work

2 restrictions that Talton had presented, and he and Mr. Laitinen informed Talton that

3 no position was then available at the San Fernando facility that would accommodate

4 those restrictions.  See Nadaf-Rahrov v. The Neiman Marcus Group, Inc., 166 Cal.

5 App. 4th 952, 980-85, 83 Cal. Rptr. 3d 190 (2008) (an employee who brings a

6 section 12940(n) claim bears the burden of proving a reasonable accommodation

7 was available before the employer can be held liable under the statute).  Talton's

8 assertion that Defendants "unilaterally" concluded that no available position existed

9 is really a claim that Defendants purportedly failed to provide a reasonable

10 accommodation, not that they neglected to engage in a good faith interactive

11 process.  Far from refusing to communicate with him on the subject, the undisputed

12 evidence reflects that Defendants did confer with Talton concerning his physical

13 limitations.  When Talton returned to work next, it was without restrictions.  No

14 reasonable juror could conclude that Defendants supposedly failed to "interact" with

15 Talton after he presented a release stating that he no longer had any disabling work

16 restrictions.[2]

17    Talton's "failure to accommodate" claim is also belied by the undisputed

18 facts.  See CACI 2541.  As noted above, when he returned from medical leave in the

19 fall of 2007, Talton initially presented his manager with work restrictions precluding

20 him from working in any available position.  Defendants have no liability for

21 disability discrimination because an employer is only obligated to reassign an

22 employee to another position within the company if there is an existing, vacant

23 position for which the plaintiff is qualified.  See Watkins v. Ameripride Servs., 375

---

25    [2] Talton's related contention that Defendants implemented "an illegal 100%

26 healed policy" is thoroughly belied by his testimonial admissions.  Moreover, the
undisputed evidence demonstrates that Defendants regularly accommodate

27 employees when they return from medical leave with work restrictions, whenever
Defendants are able to do so.

28

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

F.3d 821, 828 (9th Cir. 2004) (applying California law); see also Hastings v. Dep't of Corrections, 110 Cal. App. 4th 963, 972, 2 Cal. Rptr. 3d 329 (2003) (what is required is the duty to reassign a disabled employee if an already funded, vacant position at the same level exists).  Defendants were not required to eliminate essential elements of the job.

Talton lacks any claim for failure to accommodate because he presented a release to his employer, without any restrictions.  Furthermore, the undisputed evidence is that when Talton returned to work with his doctor's release, Defendants still required him to undergo a separate medical exam, which he also passed without work restrictions.  When he returned, Talton did not tell his supervisors that any disability made him physically incapable of doing the work that was subsequently assigned to him, but instead stated only that he was "too old."

Valadez' disability discrimination claims are similarly unfounded.  The undisputed evidence is that Valadez was cleared by his workers' compensation doctor to return to work with restrictions.  Valadez then never complained to anyone at the San Fernando facility that he was physically incapable of performing the light duty work that was assigned to him.  See also Nadaf-Rahrov, 166 Cal. App. 4th at 980-85 ("we conclude that the burden of proving ability to perform the essential functions of a job with accommodation should be placed on the plaintiff").  Valadez further concedes that he would have refused to undertake any work that he believed would injure him.

Valadez concedes that he was physically able to return to work, and admits that he never undertook an assignment he thought would cause him to be injured, and that he would have refused to do any work that he believed might cause him injury.  To be sure, Defendants cannot be held liable for discriminating against an employee on the basis of disability, when that employee admits he was not disabled and that he never undertook (and therefore was not given) an assignment that would injure him.

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Moreover, Valadez has no support for his theory that Defendants engaged in wrongdoing simply because he (silently) thought his job would be in jeopardy had he refused to return to work.  That is also an invented concern:  he admits no one *ever* threatened him, let alone with termination of his employment.

For these reasons, no reasonable juror could find for Talton or Valadez on their disability claims.  The Court should enter judgment as a matter of law against them.

## V.   THE COURT SHOULD DISMISS ALL OF PLAINTIFFS' PERSONAL INJURY CLAIMS AND ORDER A NEW TRIAL

### A.   The Non-Management Plaintiffs Have Presented No Proof of Medical Causation for their Claimed Injuries

An essential element of the Non-Management Plaintiffs' claims is that the purported adverse employment action they complain about was a "substantial factor" in causing them harm.  But with respect to their claimed injuries, they have presented no medical evidence of causation.  See Jerden v. Amstutz, 430 F.3d 1231, 1239-40 (9th Cir. 2005) (holding that, pursuant to Rule 702, it was "error" for the trial court to permit a percipient witness to review medical records and provide purported "lay opinions" interpreting them).  That is especially true for Plaintiffs January and Talton.  For example, the Court barred Mr. Talton from testifying about what he thinks purportedly "caused" his stroke.  See, e.g., Burleson v. Samson, 2007 WL 2688840, at *2 (E.D. Cal. Sept. 13, 2007) (citing Jerden, 430 F.3d at 1239-40) ("Plaintiff may not, however, interpret or otherwise explain in medical or diagnostic terms the nature or extent of his injuries or the medical records."); Rangasan v. Hawaiian Tug & Barge Corp., 2000 WL 1569285, at *3 (D. Hawai'i Apr. 6, 2000) ("medical testimony is necessary to establish a causal link between the Accident and Rangasan's back injury because the causal link is not readily apparent to a lay

person").  That is because a lay witness without medical training cannot testify concerning what he thinks "caused" a neurologic condition.[3]

As a matter of law, no reasonable juror could conclude that Mr. Talton's stroke was caused by work, let alone by alleged discrimination, absent expert medical testimony concerning causation.  Furthermore, the undisputed evidence is that Mr. Talton quit work (and cannot return) due to his stroke.  The Court should instruct the jury that Mr. Talton's stroke was not caused by work or any alleged discrimination as a matter of law, and remove his economic damages and future pain and suffering damages claims from their consideration.

Similarly, Mr. January admits that he stopped working due to a severe psychiatric condition.  But absent expert medical testimony, no reasonable juror could conclude that Mr. January experienced a psychotic episode due to anything occurring at work.  Indeed, by his own admission, January supposedly began his "depression" only after Mr. Ward informed him about Defendants' supposed discriminatory scheme in 2008, and not while Mr. January was experiencing the "altered" work assignments he was given starting in 2007.  Here again, the Court should instruct the jury that Mr. January's psychiatric condition was not caused by work or any alleged discrimination as a matter of law, and remove his economic damages and future pain and suffering damages claims from their consideration.

In addition, no doctor has given their medical opinion that any Plaintiff will continue to suffer pain or injury in the future.  Therefore, any inference from the evidence on that subject would constitute impermissible speculation.  Because no Plaintiff has established a foundation for an award of future pain and suffering damages, that issue should be resolved against all Plaintiffs as a matter of law.

---

[3] Plaintiffs' "slip-ups" include testimony that Talton "felt like my head was going to burst," and asking him to describe his "symptoms."

## B.  The Non-Management Plaintiffs Concede That Their Injuries Were Caused By Work

Even if the Non-Management Plaintiffs had come forward with expert medical testimony demonstrating that their injuries were caused by work, they cannot escape the workers' compensation bar.  Those injuries were indisputably caused by the job itself—or in some cases, Plaintiffs' own negligence—as opposed to any discriminatory employment decision.  See also Huffman v. Interstate Brands Cos., 121 Cal. App. 4th 679, 17 Cal. Rptr. 3d 397 (2004).  "Assigning" the Non-Management Plaintiffs to various driver routes, for example, is no different from someone being assigned to the loading dock for a discriminatory reason and subsequently suffering industrial injury (which the Court of Appeal has held is inadmissible as a matter of law).  Id. at 697.[4]

The undisputed evidence remains that every industrial injury the Non-Management Plaintiffs have described was suffered in the ordinary course of work that *all* drivers and warehousemen must regularly complete:

- Mr. Jones claims he suffered back and shoulder pain caused by having to build loads.  Those "injuries" (and his "stress attack," which he submitted to workers' comp) were indisputably caused by doing work performed by every other warehouseman (including loaders in their 50s).  As noted above, Mr. Jones further conceded that even when he was building loads, he was simply performing duties that could be required of him (and the other forklift operators) under the union contract.

---

[4] In addition, Defendants have consistently argued that three of the Plaintiffs' personal injury claims (and their lost pay and medical expense claims) are barred by the settlement and release of those claims in the workers' compensation system. Defendants respectfully request that the Court reconsider its prior rulings on this subject.

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

- Mr. Suhay experienced a hernia while stacking product at an Albertsons in October 2007.  But Mr. Suhay conceded that younger delivery drivers often serviced the identical stop, that the stop had been serviced since long before Mr. Laitinen arrived as Branch Manager, and that anyone who delivered product to the Albertsons that day would have had to engage in the same activity that he did.  In addition, Mr. Suhay also suffered injury to his shoulders while stacking product in the back room of a Bargain 99 Mart in February 2008.  Yet Mr. Suhay (and other witnesses) conceded that stacking product in the back room of a retail store is regularly required of delivery drivers, and that he still would have had to stack the product (and would have subjected himself to injury) even if he had been given a bulk truck that day, rather than a side loader.

- The only physical injury described by Mr. Talton is his stroke.  Even if he had presented expert medical testimony concerning causation, the stroke would remain, at best, a work-related injury incurred as a result of performing regular warehouse work.

- Mr. Valadez only described injury to his knees suffered while stepping off a delivery truck.  But Mr. Valadez' own testimony demonstrated that he experienced that injury while performing the very work (forklift work) that he contends he was deprived of.  Here again, Valadez' injury, and any alleged exacerbation of that injury during the course of working in the "breakage" area, was suffered while performing work that other warehousemen (including forklift operators) were expected to perform in the ordinary course.

- Mr. January testified about a shoulder injury he suffered while pulling a case of product off a side loader truck, when it got stuck in the plastic wrap he failed to properly remove.  Setting aside whether he alone

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

bears fault for that injury, the undisputed evidence is that the injury occurred while Mr. January was performing work expected of *any* side loader driver at *any* delivery stop.

In short, none of these injury claims should have been described to the jury given the workers' compensation preemption bar.  (Indeed, all of the Non-Management Plaintiffs have conceded that their injury claims were submitted to workers' compensation and, with limited exception, accepted by the company.)  As in Huffman, the Non-Management Plaintiffs testified at length about their claimed suffering resulting from the industrial injuries, which is highly prejudicial and designed to inflame the jury's passion.  The only possible remedy at this stage of the proceedings is to dismiss the Non-Management Plaintiffs' injury claims and order a new trial.[5]

---

[5] It will also be difficult if not impossible for the Court to untangle the emotional distress and economic damages that Plaintiffs claim and are barred by workers' compensation exclusivity.  If evidence of Plaintiffs' personal injuries are barred, so too are any emotional distress damages or lost pay claim arising from those injuries. See Charles J. Vacanti, M.D., Inc. v. State Compensation Insurance Fund, 24 Cal. 4th 800, 813, 102 Cal. Rptr. 2d 562 (2001) ("the exclusivity provisions encompass all injuries 'collateral to or derivative of' an injury compensable by the exclusive remedies of the WCA"); id. at 814 ("Causes of action seeking to recover '[e]conomic or contract damages incurred independent of any' workplace injury are also exempt from workers' compensation exclusivity.") (quoting Pichon v. Pacific Gas & Electric Co., 212 Cal. App. 3d 488, 501, 260 Cal. Rptr. 677 (1989)); see also Huffman, 121 Cal. App. 4th at 699-700 (reversing award of damages based on emotional distress flowing from physical injuries).  In addition, Defendants also contend that other issues raised by this motion cannot be cured absent a new trial.  For example, merely disposing of Ward's Tameny claim based on "breakage" practices won't cure the prejudicial effect of the extensive testimony that Plaintiffs have introduced on that subject.

## VI.   THE COURT SHOULD DISMISS THE NON-MANAGEMENT PLAINTIFFS' ECONOMIC DAMAGES CLAIM BECAUSE IT IS SPECULATIVE AS A MATTER OF LAW

Defendants respectfully renew their request that the Court dismiss the Non-Management Plaintiffs' claim for "lost" overtime pay.  See Defendants' motion *in limine* no. 9.  None of the Non-Management Plaintiffs established a foundation for Karen Smith's speculative overtime opinions.  As the Court may recall, Ms. Smith simply took the amount of overtime that the Non-Management Plaintiffs worked before 2007 and assumed the same amount of overtime work should have continued into the future indefinitely.

As an initial matter, neither Mr. Suhay nor Mr. January gave *any* testimony in support of a "lost overtime" theory.  As for the forklift operators, they only testified that they were not given the "opportunity" to work as much overtime beginning in 2007.  But that does not support Ms. Smith's far broader conclusion that the *identical* rate of overtime existing before 2007 "would have" continued through the date each Non-Management Plaintiff would be expected to retire.  That is because none of the Non-Management Plaintiffs has personal knowledge regarding, for example, whether the rate of overtime at the San Fernando facility decreased for all employees (both old and young) or if it did, why so.  Instead, the undisputed evidence (from Pete Theilmann and others) is that overtime for *all* employees at the San Fernando facility decreased because of the way the company managed shifts and because the facility added employees after 2007.  Therefore, no reasonable juror could award the Non-Management Plaintiffs any "lost pay" damages based on this theory, which is speculative as a matter of law.  Given Ms. Smith's testimony that her overtime analysis is inextricably intertwined with her economic damages opinions, the Court should enter judgment against the Non-Management Plaintiffs' economic damages claims and remove them from the jury's consideration.

1

## VII.   THE COURT SHOULD DISMISS THE NON-MANAGEMENT PLAINTIFFS' FRONT PAY DAMAGES CLAIM BECAUSE IT IS INVALID AS A MATTER OF LAW

The Non-Management Plaintiffs' front pay damages theory is invalid for additional reasons.  Specifically, Richard Laitinen left Defendants' employ long ago, and Plaintiffs have presented no evidence that the misconduct they complain about persists to this day (under someone else's auspices).  To the contrary, Jones, Valadez and Suhay all testified that, in their view, the alleged discrimination against them has ended.  Moreover, Jones, Valadez and Suhay—all of whom still work for the Defendants—cannot prove they are entitled to a front pay damages award as a matter of law because they are still employed by the company.  See Ackerman v. Western Elec. Co., 643 F. Supp. 836, 856 (N.D. Cal. 1986) ("*When reinstatement is not feasible*, front pay may be awarded.  Front pay is an equitable remedy designed not only to compensate for lost reinstatement rights by allowing *discharged employees* a reasonable opportunity to find comparable employment but also deter future improper employment action.  Front pay takes into account the employer's continuing obligation to make the *discharged employee* whole until the employee attains a level of earnings equivalent to what she enjoyed at the time of her termination.") (internal citations omitted and emphases added).  To be sure, any front pay award for them (and the other Plaintiffs) would also be entirely speculative.  Furthermore, Plaintiffs January and Talton have ceased working for the Defendants, but (as discussed above) they have presented no expert medical testimony supporting their theory of causation.  For this reason, no reasonable juror could award January or Talton front pay damages either, given that they have failed to prove their inability to work was caused by any of Defendants' alleged misconduct.  Finally, Robert Ward also has no front pay claim because he admits he is totally disabled for reasons unrelated to the alleged discrimination.

1    For all the foregoing reasons, the Court should also enter judgment against
2  Plaintiffs' front pay claims as a matter of law.

3

4  DATED:  November 29, 2011        CRONE HAWXHURST LLP

5

6                                    By_____/s/_____
7                                       Gerald E. Hawxhurst
                                        Daryl M. Crone
8                                       Joshua P. Gelbart
                                        Attorneys for Defendants
9                                       The American Bottling Company, et al.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW